## LIABILITY OF CORPORATION IN HANDS OF A RECEIVER FOR THE EXCISE TAX.

Court of Appeals for Hamilton County.

THE GERKE BREWING COMPANY ET AL V. EDWARD J.
KUERZE ET AL.

Decided, June 5, 1916.

*Taxation—Corporation in Hands of a Receiver—Liable for the Excise Tax, Unless.*

1. A receiver of a corporation is liable for the excise tax, unless there is an entire cessation of the business and the work of the receiver is confined to mere liquidation of the assets and distribution of the proceeds among the creditors.
2. In cases of prolonged liquidation made necessary by court proceedings, the hardship upon creditors and stockholders of an excise tax may be minimized by a surrender of the charter or dissolution of the corporation and the filing of a certificate thereof by virtue of the provisions of Section 11974-5, G. C.

*Peck, Shaffer & Peck,* for plaintiffs in error.

*Edward C. Turner,* Attorney-General, and *Froome Morris,* contra.

JONES (Oliver B.), J.

The question to be determined in this case is whether the excise tax upon the capital stock of the Gerke Brewing Company, under the terms of Section 5498 of the General Code, during the period when a receiver was in control of its corporate assets and conducting its corporate business, must be paid by the receiver and are a prior lien upon the corporate assets or their proceeds now in his hands.

The record shows that the so-called franchise taxes of the Gerke Brewing Company are delinquent and unpaid for the years 1908, 1909, 1910, 1911 and 1912; that during this time the corporate business was conducted by the officers of said company

until June 20, 1911, at which time under court proceedings the company was placed in the hands of a receiver and under the orders of the court the business of the company was conducted by two successive receivers until December 1, 1912, at which time further operations of the business ceased and the receiver then in charge converted the corporate property into money by sale for purposes of liquidation, which proceeded until November 5, 1913, when the entire liquidation was completed. On May 12, 1913, the company reduced its capital stock from $600,000 to $6,000, and the receiver paid the taxes for that year.

A finding of facts was made by the trial court, in which the court found that the corporate franchise tax due and payable to the state of Ohio upon the subscribed, issued and outstanding capital stock of the Gerke Brewing Company, as provided by Section 5498, General Code of Ohio, due and payable in the years 1908, 1909, 1910, 1911 and 1912 had not been paid, or any part thereof, and that there is due and payable to the state of Ohio for each of the years 1908, 1909 and 1910 the sum of $600 tax and $60 penalty, being one-tenth of one per cent. of the capital stock of $600,000 and a penalty of ten per cent. thereon; and for each of the years 1911 and 1912, the sum of $900 tax and $135 penalty, being three-twentieths of one per cent. of the capital stock of $600,000, and a penalty of fifteen per cent. thereon. And the court further find, (1) that so much of the aforesaid franchise tax due the state of Ohio as accrued prior to June 20, 1911, the date of the appointment of the receiver, is a valid claim against the defendant, and a first lien upon the assets now in the hands of the receiver; (2) that so much of the corporate franchise tax as accrued between June 20, 1911, the date of the appointment of the receiver, and October 22, 1912, the date of the general order of liquidation of the assets for the payment of the creditors above referred to, is also a valid and first lien; and (3) that so much of the aforesaid corporate franchise tax as accrued subsequent to October 22, 1912, is also a valid and first lien. And the court entered a judgment upon such finding for the total amount of said finding—amounting to $4,050.

The franchise tax under consideration is provided for by Sections 5495, 5496, 5497, 5498 and 5506, General Code of Ohio.

Section 5498 is as follows:

"Upon the filing of the report provided for in the last three preceding sections, the commission, after finding such report to be correct, shall, on the first Monday of July, determine the amount of the subscribed or issued and outstanding capital stock of each such corporation. On the first Monday in August, the commission shall certify the amount so determined by it to the auditor of state, who shall charge for collection, on or before August fifteenth, as herein provided, from such corporation, a fee of three-twentieths of one per cent. upon its subscribed or issued and outstanding capital stock, which fee shall not be less than ten dollars in any case. Such fee shall be payable to the treasurer of state on or before the first day of the following October."

Section 5506 is as follows:

"The fees, taxes and penalties required to be paid by this act, shall be the first and best lien on all property of the public utility or corporation, whether such property is employed by the public utility or corporation in the prosecution of its business or is in the hands of an assignee, trustee or receiver for the benefit of the creditors and stockholders thereof."

Although in form the taxes for all of these years is in dispute, counsel for plaintiff in error make practically no contention that up to the time of the appointment of the receiver the accrued and unpaid tax was a lien upon the assets of the corporation coming into his hands. As the receiver was appointed June 20, 1911, the taxes for the three years prior to 1911 can not be questioned. The taxes for the year 1913 under the reduced capitalization were paid. So the real question to be determined is whether or not the taxes should be paid for the years 1911 and 1912.

The report of the corporation upon which such tax is based is required to be filed each year with the state tax commission, between the first day of May and the first day of July, and the commission upon this report, under provisions of Section 5498,

determines the amount of the outstanding capital stock upon which the tax is calculated, and certifies it to the Auditor of State on the first Monday in August, who makes the charge for collection on or before August 15th, and the fee thereon is payable to the Treasurer of State on or before the first day of October. This franchise tax is chargeable and payable annually. The statute does not definitely fix the beginning and end of the year for which the charge is made, and it might be a question as to whether the year commences with the date of the certification, or whether the year for which payment is made is the calendar year. For the purposes of this case it is immaterial, because it sufficiently appears that at the date fixed for payment, to-wit, the first day of October, in both the years 1911 and 1912, the receiver was in possession of the assets of the corporation and was operating the business of the company.

Under the distinct letter of the provisions found in Section 5506 these fees, taxes and penalties are the first and best lien on all the property of the corporation, whether employed by the corporation in the transaction of its business or in the hands of a receiver for the benefit of its creditors and stockholders.

The validity of this franchise or excise tax has been upheld by our Supreme Court in *Southern Gum Co.* v. *Laylin*, 66 O. S., 578. In the opinion in that case, at page 596, the court held that—

"the exaction of one-tenth of one per cent. is not a property tax on property owned by the corporation, but is an excise tax the amount of which is fixed and measured by the amount of subscribed or issued and outstanding capital stock."

No argument has been advanced why this franchise tax should not continue to operate at least so long as the receiver is in control of the corporate assets and conducting its corporate business. As we have seen, that was the situation in this case for both the years 1911 and 1912. The Court of Appeals of Cuyahoga County in *Morley* v. *Cleveland Hippodrome Co.*, 23 C.C. (N.S.), 295, has sustained the validity of such a tax accruing after the appointment of a receiver. We regard this as a correct decision, and therefore follow it in this case.

Our attention has been called to two recent cases decided to-
gether by the United States Circuit Court of Appeals of the Sixth
Circuit, 14 O. L. R., 95, the title of one of which is *State of Ohio
v. Ferris, Receiver of the Dominion Coal Co.* We have read the
able and exhaustive opinion in this case by Warrington, J., but
do not feel that it is decisive of the question before us, for the
reason that in the instant case we do not have the question of the
entire cessation of business and the mere liquidation of assets
during the period for which the taxes are chargeable. As we
have seen, during the years 1911 and 1912 when these franchise
taxes became a charge the business was in operation, and the
period of liquidation during which no other business was trans-
acted commenced after December 1, 1912, lasting until Novem-
ber 5, 1913, and that the franchise tax for 1913 was paid without
question by the receiver.

In the opinion of the United States Court, referred to above,
Judge Warrington makes use of the following language:

"When we thus treat the interventions alike for purposes of
the tax in dispute, we appreciate the fact that we could not do
so if the receiver had during the tax years in question conducted
the corporation business in the regular way; for he then would
have been chargeable with having exercised the franchises (cit-
ing cases). As we understand the facts of the present case,
however, the receiver was during those years no more engaged in
exercising the corporate franchises than the trustees in bank-
ruptcy were during the tax years for which recoveries are sought
against them. The corporations were, and so far as appears still
are, to all intents and purposes extinct, and so could not then
any more than they can now exercise their franchises."

This opinion, therefore, refers rather to periods when no
operation of business of the company was had but merely an
actual winding up and dissolution was being enforced by the
liquidation of the assets, and therefore that decision can not be
controlling upon the conditions here.

Any hardship that might be worked by this law, upon credi-
tors and stockholders by a necessarily long continued liquidation
of the assets of a corporation through court proceedings, could

be minimized by a surrender of the charter or dissolution of the corporation, and filing certificates thereof under Sections 11974 and 11975, or by the reduction of the capital stock of such insolvent corporation, as was accomplished in this case for the year 1913. Where that is not done, it is too late, after the tax has accrued and been charged against the property, to complain, because of such charges.

The judgment below is therefore affirmed.

JONES (E. H.), P. J., and GORMAN, J., concur.