## A03A2411. RIOS v. NORSWORTHY et al.
### (597 SE2d 421)

ANDREWS, Presiding Judge.

While attempting to pass a tractor-trailer rig on the left on a two-lane road, Salvador Vicente Rios crashed his van into the driver's side front section of the rig as he tried to merge right to avoid a head-on collision with a car approaching from the opposite direction. A passenger in the van who was injured in the crash sued Rios alleging he negligently drove the van. Rios filed a third-party complaint against the rig driver, Donald Norsworthy, the driver's employer, Glenn Jackson Trucking Company, and the employer's insurer, Redland Insurance Company. The third-party complaint alleged that the rig driver caused the crash because he negligently failed to slow down or move to the right during the pass attempt so that Rios could safely complete the pass and merge back into his lane. The trial court granted summary judgment to the third-party defendants, and Rios appeals. For the following reasons, we affirm.

1. It is undisputed that Rios illegally attempted to pass the tractor-trailer rig across a double yellow line, uphill, on a curve, and in the dark. The tractor-trailer rig driver, Norsworthy, testified that he was aware there was a vehicle behind him in his lane of traffic because it was dark and he saw the vehicle's lights in his rearview mirror as he started on an uphill section of road which curved to the left and had a double yellow line prohibiting passing. Norsworthy said that, after checking his rearview mirror, he focused on the uphill curve ahead of him, and that he did not expect the vehicle behind him would attempt an illegal pass. He testified that he had just finished checking the rearview mirror and had returned his focus to the road ahead when he suddenly saw the van pull into and impact the driver's side front of his rig. Prior to that time, he did not see the van pull out to pass and did not know the van was attempting to pass. Norsworthy testified that he immediately braked when he saw the van, but at that point there was nothing he could do to avoid the crash.

Rios admitted he was attempting an illegal pass across the double yellow line on the curve. He testified that, before he could complete the pass, he realized there was going to be a head-on collision with an oncoming car, and he swerved right into Norsworthy's rig to avoid the car. Rios said he did not think Norsworthy saw him prior to his impact with the rig and that Norsworthy did nothing

to avoid the collision. Rios pled guilty to traffic offenses of passing in a no passing zone and improper lane change.

The driver of a car traveling behind Rios's van stated that, when she saw the van start to pass the rig, she "couldn't believe a van [was] passing on a double yellow line in that curve." She testified that the driver of the rig hit his brakes just before the impact in what appeared to be an attempt to let the van get past into the right lane to avoid a head-on collision with the oncoming car.

The undisputed facts show that the rig driver, Norsworthy, did not see Rios's van until it was too late to take action to avoid the impact. The issue presented on these facts is whether in the exercise of ordinary care Norsworthy should have seen the van illegally attempting to pass him in sufficient time for him to brake the rig or move to the right to avoid the collision. *James v. Allen*, 173 Ga. App. 636, 638 (327 SE2d 501) (1985) (construing the rules related to overtaking and passing in OCGA § 40-6-42). There is no absolute duty on a driver to avoid a collision; rather, all drivers are charged with the duty to exercise ordinary care under the circumstances. *Malcom v. Malcolm*, 112 Ga. App. 151, 155 (144 SE2d 188) (1965); *Blalock v. Staver*, 132 Ga. App. 628, 629 (208 SE2d 634) (1974). In general, once a driver in the exercise of ordinary care knows or should know of another driver's negligence, he has a duty to exercise ordinary care to avoid the dangerous consequences of that negligence. *Moore v. Price*, 158 Ga. App. 566, 568-569 (281 SE2d 269) (1981); *Ellis v. Dalton*, 194 Ga. App. 114, 115 (389 SE2d 797) (1989). However,

> [o]ne who is himself rightfully using the highway or street has a right to the use thereof, which is superior to that of one who is violating traffic regulations, and, in the absence of knowledge, he is not required to anticipate that some other user will unexpectedly violate the law or rule of the road and create a situation of danger.

(Punctuation omitted.) *Russell v. Corley*, 212 Ga. 121 (91 SE2d 24) (1956); *Steiner v. Melvin*, 143 Ga. App. 97, 99 (237 SE2d 635) (1977). This does not mean that a driver operating in compliance with traffic regulations is not required to exercise ordinary care to discover and avoid the consequences of another driver's negligent violation of those regulations. *Plyler v. Smith*, 193 Ga. App. 114, 115-116 (386 SE2d 881) (1989). If by the exercise of ordinary care a driver is able to acquire knowledge of a dangerous situation created by a traffic violation, the duty remains to act on that knowledge by exercising ordinary care to avoid the consequences of the violation. But in the absence of knowledge acquired by the use of ordinary care, a driver rightfully using the road is not required to exercise extraordinary

care to foresee the negligence of other drivers or to anticipate the possibility that another driver will unexpectedly violate traffic regulations and create a dangerous situation. *Russell*, 212 Ga. at 121; *Edwards v. McKenzie*, 114 Ga. App. 395, 398 (151 SE2d 469) (1966); *Southern Bell Tel. &c. Co. v. Bailey*, 81 Ga. App. 20, 25 (57 SE2d 837) (1950); *Plyler*, 193 Ga. App. at 116. In other words, where a driver rightfully using the road and exercising ordinary care fails to discover and avoid the dangerous consequences of another driver's unexpected traffic violation, he is not negligent merely because he would have discovered and avoided those consequences if he had employed a heightened degree of care. "Where the duty is that of ordinary care, one is not negligent (or contributorily negligent) merely because of failure to exercise that degree of care which would have absolutely prevented injury." *Seagraves v. ABCO Mfg. Co.*, 118 Ga. App. 414, 419 (164 SE2d 242) (1968).

Applying these principles, the evidence was undisputed that Rios was violating a traffic regulation while attempting to pass in the no pass zone. On the other hand, Norsworthy was driving his tractor-trailer rig in compliance with the rules of the road as he headed into the no pass zone, checked his rearview mirror, and determined that Rios's vehicle was still in the lane of traffic behind him. The evidence was undisputed that Norsworthy had just completed this check and refocused his attention on the uphill curve he was driving into when, unknown to him, Rios pulled out in the no passing zone, attempted to pass, then swerved toward the rig to avoid the oncoming car. The evidence was again undisputed that the first knowledge Norsworthy had of the dangerous situation created by Rios's traffic violation was the instant Rios swerved into the rig. The record shows that Norsworthy diligently checked his rearview mirror just prior to the illegal pass attempt in the no pass zone. There is nothing in the record which shows that Norsworthy knew or in the exercise of ordinary care should have known that Rios was likely to attempt an illegal pass. Under these circumstances, the duty to exercise ordinary care did not require that Norsworthy constantly check his rearview mirror to anticipate the possibility of an illegal pass attempt.

Although the issue of whether a driver has exercised ordinary care under the circumstances is usually a jury question, where the undisputed facts show liability or the lack thereof such that reasonable minds cannot differ, the issue may be decided as a matter of law. *Lauffer v. Brooks*, 220 Ga. App. 51, 53 (467 SE2d 345) (1996); *Gullatt v. Fain*, 259 Ga. App. 230 (576 SE2d 612) (2003). There is no evidence on the present record which could support a conclusion by reasonable factfinders that Norsworthy knew or in the exercise of ordinary care should have known about and avoided the dangerous consequences resulting from Rios's illegal attempt to pass in the no pass zone. In the

absence of such evidence, the trial court properly granted summary judgment in favor of Norsworthy and the other third-party defendants, whose alleged liability was wholly derivative of Norsworthy's liability. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Contrary to Rios's contention, we find no error in the trial court's order striking and refusing to consider three expert affidavits filed by Rios in response to the third-party defendants' motion for summary judgment.

The first affidavit was given by Herman Hill, a licensed professional engineer. Hill stated that, based on his examination of the accident report, accident site and the depositions of Norsworthy and the motorist who saw the accident, he had the following expert opinions: Norsworthy "was negligent in failing to respond to the [van] movement as it came alongside him"; that he "had the last clear chance to avoid the consequences of this wreck and failed to do so," and that "[t]here is sufficient sight distance along the curve and hillcrest for [Norsworthy] to have been able to perceive and react with a momentary lane change which would have prevented the collision."

Hill's opinion that Norsworthy was negligent is a conclusion constituting a mixture of law and fact and was not admissible as opinion evidence. *Lawhorne v. Soltis*, 259 Ga. 502, 503-504 (384 SE2d 662) (1989). As to Hill's opinion that Norsworthy had the "last clear chance" to avoid the collision, there was no evidence that Norsworthy had any opportunity to take evasive action after he became aware of the impending collision, so the doctrine of "last clear chance" does not apply. *Steiner*, 143 Ga. App. at 99. Moreover, Hill's opinion that Norsworthy was liable under the doctrine of "last clear chance" was inadmissible as a conclusion based on a mixture of law and fact. *Lawhorne*, 259 Ga. at 503-504. Finally, the statement that Norsworthy had a line of sight along the curve and up the hillcrest apparently states Hill's opinion that Norsworthy could see the oncoming car in the opposite lane of traffic. Even if this is true, it does not create an issue of fact on the relevant issue — whether Norsworthy exercised ordinary care to discover and avoid Rios's illegal pass attempt.

The second affidavit was given by Joseph Morrison, who stated he had a career in excess of 25 years related to driver safety issues in the heavy trucking industry and "was familiar with the standard of care associated with professional truck drivers." Based on reading Norsworthy's deposition, Morrison offered the following expert opinions: "A professional truck driver is expected to use his rear view/side view mirrors to be constantly aware of other vehicles in the immediate vicinity of his own tractor-trailer rig"; that "Norsworthy failed to adequately use the rear view/side view mirrors available to him in order to observe vehicles around him"; that Norsworthy failed to use his rearview/side view mirrors "as required by the regulations and by

recognized professional driving courses," and "[t]his failure prohibited him from seeing the van driven by [Rios] as it was attempting to pass him"; that Norsworthy's failure to properly use the mirrors to see the van was caused by inattentiveness that "may have resulted from fatigue"; that Norsworthy "failed to meet the standard of care in the professional truck driving industry" because he failed to adequately use his rear and side view mirrors to observe vehicles in the vicinity, failed to remain "position oriented" with respect to other vehicles in the vicinity, failed to remain attentive and alert, and failed to take evasive action to prevent the collision.

Morrison gave an expert opinion that standards of care in the professional truck driving industry and recognized professional driving courses require truck drivers to use rear and side view mirrors to be "constantly aware" of other vehicles, and that Norsworthy's failure to meet this standard was a cause of the collision. The trial court properly disregarded this opinion for two reasons. First, the relevant standard of care was the duty to exercise ordinary care under the circumstances. Where the duty is that of ordinary care, Norsworthy cannot be found negligent merely because he could have prevented the collision if he had exercised a heightened degree of care. *Seagraves*, 118 Ga. App. at 419. Second, expert opinion evidence is not admissible where the matter under consideration — whether Norsworthy exercised ordinary care to discover and avoid the collision — is not shrouded in the mystery of professional skill and beyond the ken of the average layman. *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114-115 (427 SE2d 86) (1993). Thus, even if Morrison had rendered his opinion on this issue using the relevant standard of care, it would not have been admissible to preclude the grant of summary judgment. Id. Morrison's additional opinions that Norsworthy did not use his mirrors to observe vehicles around him, that he was not attentive and alert, and that he may have been fatigued either have no factual basis or constitute inadmissible speculation or conclusions without probative value. *Furlong v. Dyal*, 246 Ga. App. 122, 124 (539 SE2d 836) (2000); *Dews v. Ratterree*, 246 Ga. App. 324, 325-326 (540 SE2d 250) (2000); *Chandler v. Gately*, 119 Ga. App. 513, 514 (167 SE2d 697) (1969).

The third affidavit was given by Barry Brunstein, who stated that he has "education, training, and experience for more than 30 years" in commercial motor vehicle safety, including "governmental and industry standards, regulations and practices pertaining to such commercial vehicles and whether commercial vehicles/drivers were in compliance with such regulations and standards." Brunstein gave the following expert opinions: state and federal regulations place maximum hour limitations for driving and require records to be

maintained and that neither Norsworthy nor his employer maintained such records; that Norsworthy testified he could not read or write, so he did not meet requirements to obtain a commercial driver's license and was not a qualified driver; that Norsworthy was not properly supervised or managed by his employer "relating to hours of service or other safety issues"; that "[b]y all safety standards in trucking, the driver is required to maintain a constant vigil remaining always aware of what is going on around his vehicle"; that "Norsworthy failed to meet the governmental and industry standard for commercial drivers by not being aware of his surroundings," and that, if Norsworthy had "maintained the required constant vigil" he should have seen the attempted pass by Rios.

Brunstein's expert opinion that Norsworthy failed to comply with trucking safety standards requiring him to "maintain a constant vigil" and that his failure to meet this standard was a cause of the collision was properly disregarded by the trial court for the same reasons that Morrison's similar expert opinion was properly disregarded. The relevant standard is the duty to exercise ordinary care, and the matter under consideration was not one upon which expert opinion was admissible. *Seagraves*, 118 Ga. App. at 419; *Sullivan*, 207 Ga. App. at 114-115. As to Brunstein's opinion that proper records as to hours of driving were not recorded, there is no evidence that Norsworthy had been driving for an excessive number of hours or was fatigued at the time of the accident, so the opinion was not relevant to the issue of ordinary care. Moreover, Brunstein does not refer to the state or federal regulations that he contends required such record keeping, but Jackson Trucking points to specific federal regulations that exempted it from keeping the subject records because Norsworthy drove within a 100 air-mile radius of his reporting location. 49 CFR § 395.1 (e). Brunstein's additional opinion that Norsworthy was not qualified to obtain a commercial driver's license was a conclusion not supported by the record. In fact, Norsworthy gave undisputed testimony that he holds a commercial driver's license. Moreover, in the absence of any evidence showing that Norsworthy's qualifications to hold the license had any causal connection to the accident, the opinion was not admissible on the question of ordinary care. *Butts v. Davis*, 126 Ga. App. 311, 312 (190 SE2d 595) (1972). Finally, Brunstein's opinions that Norsworthy was not properly supervised as to hours of service and other safety issues were not statements of fact supported by the record, but were mere conclusions without probative value. *Belcher v. Logan*, 150 Ga. App. 249, 250-251 (257 SE2d 299) (1979).

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Eldridge, Ellington and Mikell, JJ., concur. Adams, J., dissents. Barnes, J., disqualified.*

ADAMS, Judge, dissenting.

Even though Rios's behavior was clearly wrong — he was illegally and unsafely passing on a curve — Norsworthy was not absolved of all responsibility. He was required to maintain a diligent lookout. The majority's opinion is based on the conclusion that, as a matter of fact, Norsworthy used ordinary care to maintain a diligent lookout. Because I believe there is an issue of fact on this question, I respectfully dissent.

The majority correctly explains that all drivers must exercise ordinary care to discover and avoid the consequences of another driver's negligent conduct. Yet the majority concludes that Norsworthy cannot be negligent because he checked his rearview mirror at some point before Rios began to pass but never again before the accident. The majority must therefore conclude, as a matter of fact, that the standard of care did not require Norsworthy to look in his mirror again after that point. I believe that question should be submitted to a jury. Depending on the circumstances, including how much time elapsed, it may be that a reasonable person would have glanced in the mirror again and seen the van, with lights on and signal flashing, making a dangerous and illegal pass. See generally *Edwards v. McKenzie*, 114 Ga. App. 395 (151 SE2d 469) (1966). At that point, Norsworthy would have been required to give way to the right in favor of Rios's van. See OCGA § 40-6-42.

It is simply not plain, palpable and undisputable that Norsworthy maintained a vigilant lookout after he last glanced in his mirror. See *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997). And, as the Supreme Court has instructed, "(a)s a general proposition[,] issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication . . . but should be resolved by trial in the ordinary manner. [Cits.]" Id.

DECIDED MARCH 1, 2004 —
RECONSIDERATION DENIED MARCH 24, 2004.

*James S. Strawinski, Nicole W. Stout*, for appellant.

*Gray, Hedrick & Edenfield, William E. Gray II, Stacey K. Hydrick, Warshauer, Woodruff, Thomas & Wallace, Michael J. Warshauer, Bradford W. Thomas*, for appellees.