**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 29, 2012**

# In the Court of Appeals of Georgia

A12A0222. HOWELL et al. v. WILLIS.                              AD-011

ADAMS, Judge.

Lee and Michelle Howell appeal from the trial court's order granting summary judgment in favor of Ernest Willis in their suit for damages arising from the construction of their home. We affirm for the reasons set forth below.

The trial court helpfully summarized the background of this case in its summary judgment order, as follows:

This case arises from the construction of a residence in Lee County, Georgia, which is owned by [the Howells]. [The Howells] employed Defendants Shawn McDonald[1] and Shawn McDonald, LLC (hereinafter

---

[1] After this suit was filed, Shawn McDonald, individually, filed a Chapter 7 bankruptcy petition and the matter was stayed as to him. The trial judge's order indicates that Shawn McDonald received a discharge in bankruptcy on October 22, 2010. Shawn McDonald, LLC presumably remains, at least, a nominal party to the

referred to collectively as "McDonald") to construct the residence. [The Howells] contend that, after the construction of the residence was completed, and soon after they moved in, problems with the residence were noted. [The Howells contend] that multiple problems were caused by inferior work by the building contractor, McDonald. Other problems were attributed to alleged negligence on the part of Defendant Ernest Willis ("Willis"), a building inspector for Lee County, Georgia. Specifically, [the Howells] contend that Willis passed on inspection the concrete slab on which the house was constructed, which [the Howells] contend was too low and did not meet the applicable building code. The summary judgment granted herein pertains only to Willis and the claims asserted against him in his individual capacity. [The Howells] have conceded that their claims against Willis in his official capacity are barred by the doctrine of governmental immunity inasmuch as those claims are the same as claims against Lee County itself, which employed Willis. This action has already been dismissed as to the Lee County Board of Commissioners, which was also named as a defendant . . . .

Accordingly, this appeal addresses only the claims against Willis in his individual capacity and his assertion of the defense of official immunity as to those claims.

"The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or

litigation.

2

corruption." (Citation omitted.) *Burroughs v. Mitchell County*, 313 Ga. App. 8, 10 (720 SE2d 335) (2011). See also OCGA § 50-21-24 (2).

> [A] public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Footnotes omitted.) *Cameron v. Lang,* 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). Thus, "[t]he single overriding factor is whether the specific act from which liability arises is discretionary or ministerial." (Punctuation and footnote omitted.) *Happoldt v. Kutscher*, 256 Ga. App. 96, 99 (1) (567 SE2d 380) (2002). And the only question before us is whether Willis's inspection of the property was a ministerial or discretionary act.[2]

The distinction between a ministerial act and a discretionary act is defined as follows under Georgia law:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however,

---

[2] No evidence exists that Willis acted with malice, wilfulness, or an intent to injure in inspecting the Howells' construction.

3

calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises.

(Citations and punctuation omitted.) *Grammens v. Dollar*, 287 Ga. 618, 619–620 (697 SE2d 775) (2010). And where, as here, the facts concerning the government employee's behavior are not in dispute, the court determines whether those acts were discretionary or ministerial in determining whether the employee is entitled to official immunity. See *Nichols v. Prather*, 286 Ga. App. 889, 896 (4) (650 SE2d 380) (2007). And on appeal from the trial court's summary judgment order, we review the trial court's grant of summary judgment de novo to determine whether the evidence demonstrates a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Citation omitted.) *Burroughs v. Mitchell County*, 313 Ga. App. at 8-9.

Willis testified in his deposition that he was the Lee County inspector who inspected the construction on the Howells' residence. At the time of the deposition in August 2009, Willis had been working with the Lee County Inspection Department

4

for six to seven years and prior to that had worked in commercial construction. Willis stated that he inspected the foundation on the Howells' house on May 31, 2007. During that inspection, he looked at the footing to see if the rebar was properly in place and measured the footer to make sure that it was 18 inches. He determined that it was "okay." Willis also looked at the building slab before it was poured and measured from the top of the proposed slab to the dirt to determine that it was up to four inches. He determined that "[i]t was good." Willis did not recall the number of places he measured the Howells' foundation, but it would be more than one. He uses his own judgment to determine exactly where on a particular slab he needs to measure.

In addition to the slab and foundation measurements, Willis also confirmed that McDonald had left clearance around the building. He also walked around the outside of the foundation to determine if it came above ground "roughly" ten to twelve inches. Although he could not recall how many different places he measured the Howells' foundation, he said it was "good." Based on this inspection, Willis determined that the minimum code requirements had been met with regard to the Howells' slab and foundation, and he based his issuance of the Certificate of Occupancy upon this and subsequent inspections.

In support of his motion for summary judgment, Willis submitted an affidavit averring that he used his personal judgment and discretion in determining "whether provisions of the applicable building code were met with respect to the purposes and intent of the code." He also indicated that he carried out these inspections without direct supervision by, or specific direction, from anyone else associated with Lee County government. Willis also submitted an affidavit from his supervisor Joey Davenport, Lee County's Chief Building Official, who confirmed that in conducting inspections on the Howells' residence, Willis "was authorized to use his personal judgment and discretion in determining whether provisions of the applicable building code were met with respect to the purposes and intent of the code," including the methods he employed and the number of inspections he made. Davenport stated that Willis, therefore, was authorized to conduct the inspections without direct supervision or specific instructions from him or anyone in the building department. Davenport also said that Willis had discretion in addressing "any discrepancies he observed, which, in his opinion, did not significantly deviate from the intent and purposes of the applicable building code, or where strict interpretation of the literal wording of the building code would be impractical."

6

In opposition to Willis's motion, the Howells presented the affidavit of Greg C. Evans, a licensed professional engineer, who inspected the Howells' residence on December 22, 2010, approximately three and one-half years after Willis conducted his inspection. Evans opined that the concrete slab approved by Willis "was not at a sufficient elevation to prevent future damage to the residence by surface water," which he asserts should have been easily detected by Willis and which should have prompted him to require that McDonald take corrective measures. He also noted that the elevation of the Howells' front yard obviously decreases in elevation toward the home, which he asserts is also a building code violation.[3]

The trial court concluded based upon the evidence that Willis's actions in inspecting the Howells' residence were discretionary, not ministerial, in nature and thus that Willis enjoys "immunity from suit in his individual capacity."

Willis bore the burden on summary judgment of demonstrating that he was entitled to official immunity by showing that the specific acts he performed were discretionary. See *Ga. Dept. of Corrections v. Lamaine*, 233 Ga. App. 271, 275 (1) (502 SE2d 766) (1998) (Beasley, J., dissenting). Cf. *Sawyer v. Coleman*, 245 Ga.

---

[3] Evans also outlined the building codes he asserts were applicable to the Howells' residence, but as discussed further below, this portion of the affidavit is inadmissible hearsay.

App. 37, 38-39 (537 SE2d 193) (2000) (in actions under 42 USC § 1983, government official has burden of demonstrating that alleged violation occurred while she was acting within the scope of her discretionary authority). And this Court has previously held in the case of an inspection "the specific act from which liability arises" is not an inspector's appearance at a particular site to conduct an inspection. But rather liability "must arise from the acts [the inspector] was required to perform during the inspections." *Happoldt v. Kutscher*, 256 Ga. App. at 99 (1).

Willis presented evidence showing that he was required to perform inspections, but that he was granted discretion in determining how he went about conducting them, the methodology he employed, the number of inspections he made and the requirements, if any, he placed on contractors afterward. Thus, for example, he was not required to measure a foundation in a particular place or number of places to determine if it complied with the applicable codes. He testified that he determined how and where he would measure based upon his observance of a particular foundation. Willis had no direct supervision or specific directions in conducting these inspections. Moreover, he was instructed to use his own judgment in determining whether any deviations from the code were acceptable and whether any corrective measures were required. And Willis's testimony indicates that he used his personal

8

judgment and discretion in inspecting the Howells' property during construction. Thus, Willis carried his burden on summary judgment of demonstrating that his actions in conducting this inspection were discretionary and required more than "merely the execution of a specific duty" required for a ministerial action. See *Standard v. Hobbs,* 263 Ga. App. 873, 876 (1) (589 SE2d 634) (2003) (action is ministerial only if county creates policy requiring certain actions under certain situations); *Happoldt v. Kutscher,* 256 Ga. App. at 99-100 (1) (where review officer was required to exercise personal deliberation and judgment in determining whether standards were met, his determination was discretionary in nature); *Kordares v. Gwinnett County,* 220 Ga. App. 848, 851 (470 SE2d 479) (1996) (absent county procedure dictating the method of inspection, road official's alleged negligent inspection was discretionary).

Once Willis satisfied his burden of establishing his defense of official immunity,

> the burden of production of evidence shift[ed] to the [Howells], who [could] survive summary judgment in the same fashion that [they] would survive a motion for directed verdict at trial, i.e., by presenting *any* evidence which creates a jury issue on an element of the affirmative defense.

9

(Citations omitted.) *Weston v. Dun Transp.& Stringer*, 304 Ga. App. 84, 85 (695 SE2d 279) (2010).

We conclude that the Howells failed to carry their burden. They relied primarily upon Evans's affidavit to establish the applicable codes and Willis's alleged failure to ensure compliance with them. The trial court, however, found the affidavit to be "replete with conclusions constituting a mixture of law and fact which are not admissible as opinion evidence[,]" citing *Rios v. Norsworthy*, 266 Ga. App. 469, 472 (2) (597 SE2d 421) (2004). See also *Lawhorne v. Soltis*, 259 Ga. 502, 504 (2) (384 SE2d 662) (1989) ("Opinion evidence is not admissible if the inference drawn is a mixture of law and fact.").

Pretermitting whether the trial court accurately characterized Evans's affidavit testimony, we conclude that the affidavit was insufficient to establish the content of the codes applicable to an inspection of the Howells' residence. Building codes are not law, and their authority must be established before they are introduced into evidence:

> The general rule that safety codes or rules promulgated by government departments or voluntary associations for their informative value do not have the force of law and are not admissible in evidence upon the subjects to which they relate[] applies to bar the admission of such codes

10

or rules on the issue of negligence. . . . The fact that such authority is not sworn to[] is met in this jurisdiction by the sworn evidence of an expert witness that such authority is esteemed by the professions as good authority on the subject. . . .

(Citations and punctuation omitted.) *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 581 (2) (b) (521 SE2d 600) (1999). Evans's affidavit cites to Section 18-31 of the Lee County Building Code and states that it adopts by reference several building codes. The affidavit then purports to quote the 2006 version of one of those codes, the "International Building Code for One- and Two-Family Dwellings," (IRCFD). Even if we were to assume, without deciding, that Evans's affidavit could be sufficient to establish that the codes referenced are "good authority on the subject," we note that neither Section 18-31 of the Lee County Building Code nor the sections of the IRCFD upon which Evans relies are attached to his affidavit or are otherwise part of the record in this case. "Accordingly, the expert's assertion regarding the [codes'] contents is inadmissible hearsay and without probative value. See OCGA § 9–11–56 (e) ('Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.') [Cit.]" *Morgan v. Horton* 308 Ga. App. 192, 197 (707 SE2d 144) (2011). While an expert may offer testimony as to industry practices and whether a particular condition is

11

consistent with those practices, an expert affidavit is insufficient to establish the contents of a particular code or standard unless copies are attached to his affidavit or are otherwise made part of the record.[4] Id. The record in this case, therefore, contains no admissible evidence of the Lee County Building Code or the IRCFD.

Thus, although the Howells argue that Willis was charged with specific ministerial tasks dictated by these building codes, they have produced no admissible evidence of the codes themselves. Without such evidence, the Howells cannot establish that Willis's actions in performing the inspections were ministerial in nature. "Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty. [Cit.]" (Footnote omitted.) *Happoldt v. Kutscher*, 256 Ga. App. 98 (1). And even though Willis acknowledged in his deposition that certain minimum standards exist for construction sites, without admissible evidence of the applicable rules, we cannot determine whether the standards were so clear, definite and certain as to merely require the execution of a simple task.

---

[4] "Further, we note that 'privately established rules are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself.' (Citations and punctuation omitted.) *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 581 (2) (b), n. 1 (521 SE2d 600) (1999).

This case is distinguishable, therefore, from *Heller v. City of Atlanta*, 290 Ga. App. 345 (659 SE2d 617) (2008) upon which the Howells rely. In that case, the defendant, a city Vehicle for Hire Inspector, had purported to conduct an inspection on a taxi that subsequently spun out of control due to tires with little or no tread, resulting in the plaintiff's death. A state law requires that "[a]ll tires . . . [s]hall have not less than 2/32 inch tread measurable in all major grooves." OCGA § 40-8-74. And this court concluded that "[c]hecking tires for proper tread depth is a simple, ministerial task." Id. at 348 (1). Moreover, the inspector stated that he was unaware of this statutory requirement. Id. at 348-349 (1). Thus, no evidence existed that the inspector had checked the tires at all to see if they complied with the standard. And on certiorari, our Supreme Court agreed that the inspection of tires were ministerial in nature and found that "the inspector had no 'discretion' to ignore whether the tires met this minimum legal requirement and to allow a taxi with inadequate tread on its tires to be cleared for use on the roads." *Georgia Dept. of Transp. v. Heller*, 285 Ga. 262, 267 (2) (674 SE2d 914) (2009).

In *Heller*, the applicable law required a measurement of 2/32 inch in all major grooves of a tire, which indicates not only the required measurement, but also where the measurement must be taken, i. e., the tire's major grooves. A significant size

13

differential exists between a tire tread and the foundation of an entire house, and without admissible evidence of the code, we have no indication that the building codes in this case dictated where or how any particular measurement must be taken on the foundation. Moreover, unlike the inspector in *Heller*, Willis testified that he did inspect the property, took measurements at various locations and concluded in his personal judgment that they were "good."

Thus, based upon the evidence in the case, the Howells' allegations that Willis failed to conduct adequate and proper inspections are merely allegations that Willis failed to use proper judgment in conducting those inspections. *Peele v. Dobbs,* 196 Ga. App. 684 (396 SE2d 600) (1990) (building inspector entitled to official immunity where allegations that he inspected chimney, but failed to use sound judgment merely alleged a violation of a discretionary function). We conclude, therefore, that Willis was entitled to official immunity from the Howells' claims and that the trial court properly granted summary judgment to Willis on that ground.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*