**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A1090. JOBLING et al. v. SHELTON.

MCMILLIAN, Judge.

Deborah and William Jobling, as surviving parents and as administrators of the Estate of Karli Jobling (the "Joblings"), appeal the trial court's October 13, 2014 order granting the "Motion to Dismiss and/or Motion for Summary Judgment" filed by Bill Shelton in their action asserting claims arising out of the 2011 death of their daughter, Karli, in an automobile accident. Finding that the Joblings' claims are barred by sovereign and official immunity, we affirm.

The Joblings' complaint asserts that their daughter was killed at approximately 7:07 p.m. on January 14, 2011, when the car in which she was riding lost traction on ice that had accumulated on Stilesboro Road in Cobb County (the "County") and collided with another car (the "Accident"). Viewed in the light most favorable to the

Joblings,[1] the evidence shows that at the pertinent time, Shelton served as road maintenance division manager with the Cobb County Department of Transportation ("CDOT"). In that position, Shelton supervised county bridge and guardrail crews, heavy equipment operators, right-of-way crews, asphalt crews, concrete crews, drainage crews, and an administrative assistant. One of Shelton's duties was to oversee county operations in addressing weather-related hazards on county roads as they were brought to his attention. When Shelton received a report of a road hazard, such as ice, he contacted a crew supervisor, who, in turn, dispatched a crew to address the problem within a reasonable amount of time.

Shelton testified that determining how to prioritize where crews were dispatched required a subjective decision based on the event, and "[e]very event's different." As he explained, "[I]f you've got one pothole, you're going to direct a crew to go that pothole. If you [have] 1,000 calls, you can't take care of 1,000 at one time." However, once a crew was dispatched to respond to an issue, they were to go "immediately" to address the situation. Shelton acknowledged that ice patches on a

---

[1] We review the trial court's order granting Shelton's motion under the de novo standard of review applicable to orders on summary judgment, construing the evidence in a light most favorable to the Joblings, as nonmovants. See *Kelley v. Randolph*, 295 Ga. 721, 722 (1) (763 SE2d 858) (2014).

2

roadway were considered a priority in his department because of the hazard they pose to the motoring public.

A signficant snowstorm hit the County on the night of January 9, 2011, resulting in four to six inches of snowfall (the "Snowstorm"). Cobb County is a large county with over 2,500 miles of roadway, and Shelton testified that as a result of the Snowstorm, "[a]ll 2,500 miles of roads were under ice and snow." County workers performed most of the work clearing snow and ice from the County roads, with assistance from a subcontractor,[2] pursuant to the County's emergency response preparedness and inclement weather procedures. Under those procedures, in an emergency situation involving ice on roadways, the County first treats the roads designated as "primary" based on traffic volume and then treats the "secondary" roads. The County classifies Stilesboro Road as a secondary road. Shelton testified in his deposition that after the Snowstorm, the County treated the County roads in the order prescribed in its procedures, and Stilesboro Road received at least two ice treatments between January 9 and January 14 during that process.

---

[2] The Joblings also named the subcontractor as a defendant in this lawsuit but later dismissed their claims against the subcontractor without prejudice.

In addition, County work orders indicate that the road was treated on at least two other occasions prior to the Accident in response to calls from citizens or law enforcement: on January 12[3] and on the morning of January 14.[4] Shelton stated that he does not generally receive the work orders resulting from such calls, but whoever received them would dispatch a crew to address the situation. The timing of the response depends on the County's workload at the time because the County has only limited crews available to cover such events.

The CDOT website also allowed individuals to report problems by e-mail. Shelton testified that several CDOT employees monitored the receipt of these e-mails, but those employees were under the supervision of the traffic operations manager, not Shelton, and thus he could not say whether someone monitored the e-mails "at all times" during inclement weather. Shelton stated that the response to e-mails received through the website "depended on the volume of calls they were receiving, the event."

County records indicate that someone e-mailed the CDOT at 1:17 p.m. on January 14, 2011, to report ice on Stilesboro Road at a location "a couple of miles"

___

[3] Other documentation indicates that the road may have been treated twice on January 12.

[4] The road was also treated after the Accident on the evening of January 14 or early January 15.

4

from the Accident site. Shelton could not say what the response was to this particular e-mail "because there were thousand of phone calls, thousands of requests. It's just not something that would have come through immediately. The volume was tremendous." A second e-mail, sent at 6:26 p.m. on January 14 (which was 41 minutes before the Accident), notified the CDOT of ice on portions of three different roads, including an intersection on Stilesboro Road within 500-600 feet of the Accident site.[5] Shelton testified that he was not aware of either of the E-mails prior to the Accident , and County records indicate that both E-mails were forwarded to Shelton on January 21, 2011 during his investigation following the Accident. He testified that he probably did not see them until that date.

The Joblings filed their complaint on December 27, 2012, expressly asserting claims against Shelton "in his official capacity of Director of Road Maintenance for the [CDOT]," but the Joblings' claim against Shelton also alleged that he had breached his "ministerial duty to promptly respond to known dangerous conditions caused by inclement weather." On March 10, 2014, Shelton filed a motion seeking to dismiss the Joblings' claims against him in his official capacity under OCGA § 9-11-12 (b) (1) based on the doctrine of sovereign immunity and further sought

---

[5] Both January 14 e-mails will be referred to collectively as the "E-mails".

summary judgment on the Joblings' claims to the extent that the Joblings were also asserting claims against him in his personal capacity. The trial court notified the parties on August 4, 2014 that it would treat Shelton's motion as one for summary judgment and gave additional time for the parties to file further evidence and briefs. Subsequently, on October 13, 2014, the trial court issued its order finding that Shelton was protected by sovereign immunity as to any claims asserted against him in his official capacity and that he was entitled to summary judgment as to any claims asserted against him in his personal capacity based on the court's review of all matters of record, including Shelton's deposition.

1. As an initial matter, we find that Shelton is entitled to the protection of sovereign immunity as to any claims asserted against him in his official capacity. Under the Georgia Constitution, the protection of sovereign immunity extends to the state and all of its departments, including counties, "and thus protects county employees who are sued in their official capacities, unless sovereign immunity has been waived." (Citation omitted.) *Ratliff v. McDonald*, 326 Ga. App. 306, 309 (1) (756 SE2d 569) (2014). See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994). "[A]ny waiver of sovereign immunity must be established by the party seeking to benefit from that

6

waiver." (Citation and punctuation omitted.) *Ratliff*, 326 Ga. App. at 309 (1). The Joblings have not identified any waiver of sovereign immunity applicable to the facts in this case, and we are aware of none. Therefore, we affirm the trial court's order as to any claims asserted against Shelton in his official capacity.

2. The Joblings contend, however, that the trial court erred in granting Shelton's motion for summary judgment on the ground of official immunity.[6]

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee

---

[6] We reject Shelton's argument on appeal that the Joblings asserted claims against him only in his official capacity. Pretermitting whether Shelton properly preserved this issue below, we find that the allegations of the complaint alleging that Shelton breached a ministerial duty were sufficient under the requirements of notice pleading to apprise Shelton that the Joblings were asserting claims against him in his personal capacity, as well as in his official capacity. See generally *Duffield v. Chui*, 314 Ga. App. 214, 215, n.3 (723 SE2d 506) (2012) (notice pleading requirements); *Ward v. Dodson*, 256 Ga. App. 660, 662 (569 SE2d 554) (2002) ("in determining the capacity in which a defendant is sued, courts should look to the complaint and the course of the proceedings"). And, indeed, Shelton fully briefed the issue of official immunity as it applied to claims against him in his personal capacity both on appeal and below.

may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Citations and punctuation omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). See also *Tattnall County v. Armstrong*, 333 Ga. App. 46, 49 (1) (775 SE2d 573) (2015); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). Because the Joblings have provided no evidence that Shelton acted or failed to act with wilfulness, malice, or corruption, the question before us is whether Shelton's failure to address the ice on Stilesboro Road at the scene of the Accident was a failure to perform a ministerial act or a discretionary act. See *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010).

"The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." (Citation and punctuation omitted.) *McDowell v. Smith*, 285 Ga. 592, 594-95 (678 SE2d 922) (2009). "Thus, in analyzing a claim of official or qualified immunity, 'the single overriding factor is whether the specific act from which liability arises is discretionary or ministerial.'" (Citation and punctuation omitted.) *Tattnall County*, 333 Ga. App. at 50 (1). In Georgia,

8

> [a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Howell v. Willis*, 317 Ga. App. 199, 201 (729 SE2d 643) (2012).

"A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." (Citations omitted.) *Roper v. Greenway*, 294 Ga. 112, 114-15 (751 SE2d 351) (2013). "Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Citation, punctuation, and footnote omitted.) Id. at 115. Additionally, Georgia courts have found that *actual* notice of a hazardous condition gives rise to a ministerial duty on the part of an individual charged with responsibility to respond to such a condition. See *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982) (once government employee notified of missing stop sign, he has ministerial duty to replace it); *Barnard v. Turner County*, 306 Ga. App. 235, 239 (1) (701 SE2d 859) (2010) (actual notice of water over road gave rise to a

9

ministerial duty on the part of the county road superintendent to respond); *Lincoln County v. Edmond*, 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998) (once road superintendent received notice of a downed tree blocking the road, he had ministerial duty to remove it).

In the trial court, the Joblings asserted that Shelton breached a ministerial duty in failing to act in response to complaints of hazardous conditions on Stilesboro Road the day of the Accident and thus was not entitled to official immunity. On appeal, they argue that the trial court erred in finding that Shelton was protected by official immunity because Shelton failed to carry his burden of showing that no genuine issue of material fact existed as to three issues.

(a) The Joblings first assert that Shelton failed to show that no genuine issue of material fact remained as to whether he had "any notice of icing on the relevant stretch of Stilesboro Road on January 14, 2011." They assert that questions remain as to whether Shelton received the E-mails reporting ice on the road on January 14.

As the moving party on summary judgment, Shelton bore the initial burden of establishing that he was entitled to the protection of official immunity. *Howell* , 317 Ga. App. at 203; *Standard v. Hobbs*, 263 Ga. App. 873, 879 (3) (589 SE2d 634) (2003). And Shelton testified, without contradiction, that determining how to

10

prioritize the County workforce in response to an event or a complaint required him to engage in subjective decision-making based on the circumstances. The Joblings, in fact, concede that Shelton's actions relating to the prioritization of road maintenence projects or resource allocation during the week of the Snowstorm were "plainly discretionary." Although Shelton acknowledged that he had a duty to respond to road hazards in a reasonable fashion as they were brought to his attention, he denied having any actual knowledge that Stilesboro Road was in a hazardous condition on January 14, so as to give rise to a ministerial duty on his part to respond. Shelton stated that he did not receive the E-mails before the Accident, and the documentation of record shows only that the E-mails were forwarded to him on January 21, 2014. Shelton stated that he probably first saw the E-mails on that date. Thus, we find that Shelton carried his burden of showing that he had not breached a ministerial duty in this case.

Once Shelton made this prima facie showing, the burden to produce evidence shifted to the Joblings to come forward with rebuttal evidence sufficient to show that a genuine issue of fact existed with regard to whether Shelton had, in fact, breached a ministerial duty. See also *Howell*, 317 Ga. App. at 204; *Standard*, 263 Ga. App. at 879 (3). Although the Joblings question the credibility of Shelton's testimony

11

regarding his lack of notice and the E-mails, they have failed to point us to any evidence in the record to contradict it. We cannot simply disbelieve Shelton's uncontradicted testimony and ignore the evidence it provides because the Joblings question his credibility. *Stevenson v. City of Doraville*, 294 Ga. 220, 224 (2) (751 SE2d 845) (2013). Rather,

> what one witness says on a material point [must be] genuinely contradicted by some other evidence – what another witness says, a prior statement by the witness, or a document or other piece of physical evidence. Once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of fact as summary judgment cannot be avoided based on mere speculation or conjecture.

(Citations omitted.) Id. We find that the Joblings failed to carry their burden on summary judgment by failing to produce evidence creating a genuine issue of material fact regarding the issue of notice. The uncontradicted evidence shows that Shelton did not receive notice prior to the Accident of the icy conditions on Stilesboro Road and thus no evidence exists that he had a ministerial duty to act based on actual notice of the hazard.

(b) Second, the Joblings contend that questions of fact remain as to whether Shelton failed to perform the ministerial task of having the CDOT website monitored

12

during the week of the Snowstorm. Pretermitting whether the Joblings' arguments in opposition to Shelton's motion for summary judgment were sufficient to preserve this issue for appeal, the uncontradicted evidence in the record demonstrates that Shelton had no obligation to monitor the website. To the contrary, Shelton testified that the employees who monitored the website were under the supervision of someone else in another division, i.e., the County traffic operations manager. Under these circumstances, no genuine issue of material fact exists as to whether Shelton had a ministerial duty in this regard.

(c) As their third contention, the Joblings assert that issues of fact exist surrounding Shelton's "admitted failure" to supervise the snow-clearing and de-icing work on Stilesboro Road during the week following the Snowstorm in order to confirm that all the work was completed in an acceptable manner. However, the Joblings failed to raise this argument below in opposition to Shelton's motion for summary judgment, instead basing their argument solely on assertions that Shelton failed to act in response to the hazardous conditions on Stilesboro Road on January 14. It is well settled that this Court will not consider arguments asserted for the first time on appeal and thus neither raised nor ruled upon in the trial court. See *Davis v. Whitford Properties, Inc.*, 282 Ga. App. 143, 145 (1) (637 SE2d 849) (2006). "The

13

trial court cannot be reversed on any ground or argument not presented for or against a motion for summary judgment." (Citation and punctuation omitted.) *Hash Properties, LLC v. Conway*, 298 Ga. App. 241, 243 (1) (679 SE2d 799) (2009). As our Supreme Court has explained, "in responding to a motion for summary judgment, plaintiffs have a statutory duty "to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case." (Citation and punctuation omitted.) *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002). Accordingly, we find that the Joblings have waived this issue for appeal.

Therefore, the record contains no evidence that Shelton had a ministerial duty arising out of actual notice of the specific hazard on Stilesboro Road. And the Joblings have not pointed us to any evidence showing that Shelton's actions or failure to act with regard to Stilesboro Road violated the County's inclement weather procedures or that Shelton violated any other written or unwritten policy, a supervisor's specific directive, or a statute imposing a ministerial duty on him. Accordingly, because the record contains no evidence that Shelton negligently performed a ministerial act, the trial court correctly found that Shelton was entitled to the protection of official immunity. See, e.g., *Brown v. Taylor*, 266 Ga. App. 176,

14

177 (596 SE2d 403) (2004) (actions discretionary where evidence showed no violation of specific policy, no evidence that defective condition had been reported to employees at issue, and the employees had not been instructed to inspect or repair the roadway where accident occurred).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.