S12G1316. STEVENSON v. CITY OF DORAVILLE et al.
(751 SE2d 845)

THOMPSON, Chief Justice.

We granted a writ of certiorari in this case to decide whether the Court of Appeals erred in its determination that the public duty doctrine insulated the City of Doraville from liability arising from the response of a Doraville Police Department ("DPD") officer to a vehicle emergency on an interstate highway which culminated in a multi-vehicle accident injuring Kenyatta Stevenson. *Stevenson v. City of Doraville*, 315 Ga. App. 233 (726 SE2d 726) (2012). Stevenson sued the City and DPD Officer Sean Mahar asserting Mahar was negligent in failing to redirect traffic away from Stevenson's disabled car and in causing traffic to move in Stevenson's direction by engaging his vehicle's blue emergency lights while stopped near the outer lane of the highway behind and to the right of Stevenson. The trial court granted summary judgment to both defendants, finding official immunity shielded Mahar from liability and that the public duty doctrine precluded Stevenson's claims against the City.

Stevenson appealed the grant of summary judgment to the City arguing that the public duty doctrine did not apply to his case because he alleged affirmative acts of negligence and that, even if the doctrine did apply, he fell within the special relationship exception identified

in *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993). The Court of Appeals affirmed, finding Stevenson's arguments lacked merit. Although it appears the Court of Appeals based its rejection of Stevenson's first argument on its finding that "there is nothing in the record . . . showing any active negligence on the part of the officer," we write to clarify that the public duty doctrine does not apply to limit liability where a claim of active negligence (misfeasance), rather than a mere failure to act (nonfeasance), is alleged. For the reasons that follow, we affirm the Court of Appeals' decision in this case.

> On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013) (quoting *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001)). So viewed, the relevant evidence shows the following.

Stevenson was driving at night during a rainstorm on Interstate 285 in the lane closest to the median when he began experiencing car trouble. Attempting to maneuver his car across six lanes of traffic to the far right shoulder of the interstate, Stevenson was only able to make it across two lanes before his car stalled completely. As his car coasted to a stop in the third traffic lane from the right, Stevenson noticed a police vehicle to his right near the outer shoulder of the highway with its emergency lights activated. This vehicle was driven by Mahar, who, upon seeing Stevenson's disabled car, engaged his vehicle's flashing blue lights. By the time Stevenson's car stopped moving, the police vehicle was at the four o'clock or five o'clock position behind and to the right of Stevenson's car.[1]

Stevenson turned on his emergency flashers and remained in his stalled car, presuming Mahar would provide assistance. Mahar, meanwhile, called dispatch, announced his location, and reported he was attempting to reach the road hazard created by Stevenson's vehicle. Deciding he could not get to Stevenson's vehicle due to the

---

[1] Although the amended complaint alleges the police vehicle was in either the first lane of traffic or the emergency lane and Stevenson argued in his brief and in oral argument that the vehicle was in the first lane of traffic, there is no evidence in the record which places the police vehicle in this location prior to the accident. Mahar claims he was stopped on the side of an entrance ramp across several lanes of traffic and a grassy median from Stevenson's car prior to the accident and that he moved his vehicle onto the interstate only after the accident occurred.

traffic, Mahar, who was driving a police K-9 vehicle, called dispatch a second time seeking additional assistance.

After several minutes passed without his receiving help, Stevenson exited his car and walked to the front of his vehicle to try to get Mahar's attention. Within seconds, a car driven by James Zastrow moved into Stevenson's lane to avoid a merging tractor trailer truck and struck Stevenson's car, which in turn hit Stevenson and resulted in a multi-car accident. Zastrow stated in his affidavit that he never saw any flashing blue lights but claimed he would not have moved into Stevenson's lane and would have avoided the collision if the tractor trailer truck on his right had not moved from the first lane of travel into the second lane directly in front of him.

1. The public duty doctrine was adopted by this Court in *City of Rome v. Jordan*, supra, 263 Ga. at 27, to answer the question of whether a duty exists upon which a municipality can be held liable for the failure to provide police protection to an individual citizen. Observing that "[t]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care," the Court concluded,

> where *failure* to provide police protection is alleged, there can be no liability based on a municipality's duty to protect the general public. However . . . where there is a special relationship between the individual and the municipality which sets the individual apart from the general public and engenders a special duty owed to that individual, the municipality may be subject to liability for the *nonfeasance* of its police department.

Id. at 28-29 (emphasis omitted and supplied).

In order to establish the existence of a special relationship, the Court identified three requirements:

> (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

Id. at 29.

Specifically noting that "this case involves the municipality's *failure* to act, as opposed to any affirmative act of negligence," the Court in *City of Rome* signaled its intent to limit application of the

newly created doctrine to claims of nonfeasance. Id. at 27, n. 2. In subsequent decisions, a majority of this Court has declined to extend the doctrine to include affirmative acts of negligence and, under our established precedent, the public duty doctrine's limitation on liability is restricted to cases involving police nonfeasance.[2] See *Rowe v. Coffey*, 270 Ga. 715 (515 SE2d 375) (1999). Accordingly, Stevenson's claims based on misfeasance are not precluded by the public duty doctrine, and to the extent the Court of Appeals' opinion in this case can be read to hold otherwise, it is disapproved.

2. Having determined the public duty doctrine does not insulate the City from liability with respect to Stevenson's claims alleging actual misfeasance, we consider whether the Court of Appeals erred in finding there existed no factual support for these claims. Stevenson contends Mahar was actively negligent in three ways: (1) by activating his police vehicle's blue emergency lights without rendering additional aid, thus hindering Stevenson's efforts to help himself; (2) by engaging his unit's emergency lights while stopped in the four o'clock or five o'clock position behind Stevenson's disabled vehicle thus causing traffic to divert in Stevenson's direction; and (3) by stopping his police vehicle in the first lane of travel in a position behind and to the right of Stevenson's vehicle prior to the accident thus creating a hazard forcing traffic to divert into Stevenson's lane. The City disputes these claims, arguing there is no admissible evidence in the record showing Mahar actively hindered anyone from helping Stevenson or otherwise negligently increased the risk of harm to Stevenson.

Summary judgments enjoy no presumption of correctness on appeal and will be upheld only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c); *Cowart v. Widener*, 287 Ga. 622, 624 (697 SE2d 779) (2010). A movant for summary judgment has not met his

---

[2] In a lengthy dissent in *Hamilton v. Cannon*, 267 Ga. 655, 657-664 (482 SE2d 370) (1997), Presiding Justice Fletcher, joined by Justices Sears and Hines, claimed that while an argument could be made for limiting the public duty doctrine to police nonfeasance, the Court had not yet made it. Noting the difficulty in distinguishing between acts of misfeasance and nonfeasance in that the same behavior often can be alleged as either a negligent act or a negligent failure to act, the dissent urged that the doctrine be extended to apply to affirmative acts of negligence as well as to the failure to act. To counterbalance this extension, the dissent also urged creation of a "special duty" exception to the doctrine based on the specific actions of a police officer at the scene of the emergency in exercising control over an identifiable individual and voluntarily undertaking to assist that person — essentially evaluating allegations of misfeasance as part of the special relationship analysis. Id.

burden where a material issue can be eliminated only by making credibility judgments. Id. at 633. See *Holmes v. Achor Center*, 249 Ga. App. 184, 192 (547 SE2d 332) (2001). This does *not* mean, however, that a witness's uncontradicted testimony can simply be disbelieved in order to eliminate the evidence it provides. *Cowart*, 287 Ga. at 633. Instead, this requirement applies only where what one witness says on a material point is genuinely contradicted by some other evidence — what another witness says, a prior statement by the witness, or a document or other piece of physical evidence. Id. Once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of fact as summary judgment cannot be avoided based on mere speculation or conjecture. Id. at 633-634. See *Butler v. Huckabee*, 209 Ga. App. 761, 762-763 (434 SE2d 576) (1993) (summary judgment was appropriate in negligence case where "the only admissible evidence of the speed of [Huckabee's] truck was Huckabee's statement" that he was driving below the speed limit, and plaintiff's testimony that the defendant " 'must have been going awful[ly] fast for me not to see him coming' " was inadmissible conjecture).

With regard to Stevenson's first claim, in which he alleges Mahar interfered with his efforts to help himself by activating the police vehicle's emergency lights without rendering additional aid, we find it is in fact a claim of nonfeasance to which the public duty doctrine applies. In support of this claim, Stevenson relies on the expert testimony of Donald Pullease, a 26-year veteran of the Ft. Lauderdale Police Department. Pullease opined that Mahar's decision to activate his blue lights was negligent "because he hindered Mr. Stevenson's own efforts to take action to avoid injury by giving the impression that he was there to assist." Although Stevenson testified that at the time he noticed the blue lights he was not sure why they were on or why the police vehicle was stopped and that he ultimately exited his vehicle in an attempt to get Mahar's attention, he asserts that had the police cruiser not been present with its blue lights activated he would not have waited, but would have exited his car immediately. He further contends that by waiting in his vehicle in response to seeing the lights, he missed opportunities to get across two lanes of the interstate highway on foot.

In essence, Stevenson argues that Mahar was negligent based on either Mahar's mere presence at the scene which caused Stevenson to delay taking action, or Mahar's failure to do anything other than turn on his emergency lights. Under either scenario, we find Stevenson does not allege a claim of misfeasance, but one more properly viewed as a claim of nonfeasance. Contrary to Stevenson's assertion, there is no evidence in the record showing anyone attempted to help him, or

that Mahar actively hindered anyone, including Stevenson himself, from so doing,[3] and we decline to hold that a police officer's decision to engage his emergency lights while stopped on the side of the road to assess a situation involving a disabled vehicle on a busy interstate at night, in and of itself, constitutes an act of negligence. By turning on his emergency lights, Mahar issued a warning to all travelers on the highway of the danger caused by Stevenson's stalled car, not an explicit assurance of help to Stevenson. See *Tilley v. City of Hapeville*, 218 Ga. App. 39, 41 (459 SE2d 567) (1995) (public duty doctrine applied where officer failed to warn or direct motorist away from an abandoned car parked on the highway). The fact that Stevenson may have detrimentally relied on Mahar's presence does not convert his claim of nonfeasance into one of misfeasance.

Although Stevenson's remaining claims, based on the contention that Mahar contributed to the collision by creating hazards that diverted traffic toward Stevenson's stalled vehicle, allege acts of actual misfeasance, we find no admissible evidence in the record upon which a reasonable inference could be drawn in support of either claim. Stevenson's expert witness opined that Mahar negligently increased the risk of harm to Stevenson by placing his police vehicle in the four o'clock or five o'clock position behind Stevenson while engaging his unit's emergency lights, thus increasing the likelihood that motorists would move toward the center lanes of travel where Stevenson was stranded. He found this especially likely in light of the requirements of Georgia's "move-over" law, OCGA § 40-6-16.[4]

There is no record evidence, however, which shows Mahar's lights caused any vehicle to change lanes. To the contrary, Zastrow, the driver whose car hit Stevenson, stated he never saw Mahar's vehicle or any flashing blue lights. Although Zastrow claims he would not have moved into Stevenson's lane and would have avoided the collision had not a tractor trailer moved from the first lane into the second lane directly in from of him, the driver of this tractor trailer was never located. We agree with the trial court that it is sheer speculation that Mahar's emergency lights were seen by the unidentified truck driver or played any role in his decision to change lanes.

---

[3] Compare *Daley v. Clark*, 282 Ga. App. 235 (638 SE2d 376) (2006) (public duty doctrine did not apply where police officers at the scene actively hindered the efforts of others to assist an identifiable victim).

[4] This law requires motor vehicle operators to change lanes away from emergency vehicles with flashing lights where it would be safe to do so. In situations where changing lanes would be unsafe, however, the law requires drivers to reduce their speed to below the posted speed limit and be prepared to stop.

Nor do we find any admissible evidence upon which to base an inference that, prior to the accident, Mahar stopped his police vehicle in the first lane of traffic and not the side of the road as he claimed, thus creating an actual hazard forcing traffic to divert toward Stevenson's disabled vehicle. Although the accident report prepared by DeKalb County Police Officer Travis Bui, the investigating officer on the scene, contains a diagram showing Mahar's vehicle located in the first lane of travel and at a five o'clock position with respect to Stevenson's vehicle *after* the accident, it provides no evidence of the location of Mahar's vehicle before or at the time of the accident. In his affidavit, Officer Bui states:

> After speaking to witnesses on the scene and inspecting the scene itself, I determined that the position of [Mahar's] vehicle was at approximately a five o'clock position in relation to the point of impact with Mr. Stevenson's vehicle. Also, when I arrived, [Mahar's] vehicle was not on an entrance ramp, and there was no gore area or median or grass separating [Mahar's] vehicle from the Interstate.

Neither Bui's testimony, nor the accident report itself, provides evidence with respect to the location of Mahar's vehicle at the time of the accident and there is nothing in the record to contradict Mahar's testimony that he moved his vehicle onto the roadway after the accident occurred.[5] While Stevenson offers Bui's testimony and the affidavit testimony of an expert accident reconstructionist to challenge Mahar's testimony with respect to the pre-accident location of Stevenson's vehicle and, by implication, Mahar's credibility, nothing in either affidavit provides evidence as to the pre-accident location of Mahar's vehicle. As a result, there is a complete absence of evidence in the record to support Stevenson's allegation that Mahar stopped his vehicle in the first lane of traffic prior to the accident thereby creating a hazard which increased the risk of harm to Stevenson.

Accordingly, we find no error in the Court of Appeals' determination that there was no factual support in the record for Stevenson's claims that Mahar was actively negligent.

3. There being no evidence in the record of active negligence, Stevenson can avoid application of the public duty doctrine only upon

---

[5] Although Stevenson urges this Court to consider Bui's testimony and the accident report as some evidence in support of his claim that Mahar was negligently stopped in the first lane of traffic prior to the accident, we note accident reports generally are inadmissible in civil damages trials. See *Brown v. State*, 274 Ga. 31, 32-34 (1) (549 SE2d 107) (2001); *Scott v. LaRosa & LaRosa, Inc.*, 253 Ga. App. 489, 490 (559 SE2d 525) (2002).

the showing of a special duty owed him, individually, by the City. Stevenson asserts he meets the requirements set forth by this Court in *City of Rome* for establishing the existence of a special relationship between himself and the City giving rise to such a duty. Alternatively, he argues that this Court should find a special duty exists under the facts of this case even in the absence of a special relationship.

Applying the test for a special relationship to the facts presented, we find no evidence that Mahar gave Stevenson an explicit assurance he would act on Stevenson's behalf and upon which Stevenson could have justifiably relied. As previously determined in Division 2, by turning on his police lights, Mahar was issuing a warning to all travelers on Interstate 285 of the danger created by Stevenson's stalled vehicle, not providing Stevenson with an explicit assurance of assistance. Moreover, Stevenson himself admitted he was uncertain whether Mahar had activated his patrol lights in response to Stevenson's car breaking down or for some other reason. Although Stevenson argues he remained in his vehicle longer than he would have, and to his detriment, because he thought Mahar was going to help him, his decision was based solely upon his personal belief that Mahar would come to his aid, thus his reliance was not justified. As this Court has observed, "[t]o allow such an expression of reliance to satisfy the reliance requirement in the special relationship test would render the requirement virtually meaningless." *City of Rome*, supra, 263 Ga. at 30 (3) (plaintiff's reliance, based solely on her belief that the police were coming to help her and not on any promise made by the police, was not justified). Accordingly, even assuming knowledge on the part of the City that Stevenson might be harmed as a result of Mahar's nonfeasance, it is clear Stevenson failed to meet the first and third requirements for establishing the existence of a special relationship. See *City of Rome*, supra, 263 Ga. at 29.

Nonetheless, Stevenson asserts this Court should find the City owes him a special duty because he was an identifiable person in danger and there was an officer on the scene who negligently failed to render aid. He argues this Court left open just such a possibility in *City of Rome* when it noted that

> [s]ince the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act.

263 Ga. at 29, n. 4. Despite this language, this Court has never util-

ized such a broad exception to the public duty doctrine even when urged to do so,[6] and we decline to do so in this case. See *Partain v. Oconee County*, 293 Ga. App. 320, 322 (667 SE2d 132) (2008); *Landis v. Rockdale County*, 212 Ga. App. 700 (445 SE2d 264) (1994).

Accordingly, we find the public duty doctrine insulates the City from liability for Stevenson's claims in this case, and the decision of the Court of Appeals affirming the trial court's grant of summary judgment to the City is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 25, 2013.

*Pope & Howard, J. Marcus Edward Howard*, for appellant.
*Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray*, for appellees.
*Susan J. Moore, James R. Westbury, Jr.*, amici curiae.

---

[6] See *Rowe v. Coffey*, supra, 270 Ga. at 717-720 (Fletcher, P. J., and Sears, J., concurring specially).