**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2397. GWINNETT COMMUNITY BANK v. ARLINGTON    JE-125
    CAPITAL, LLC et al.

ELLINGTON, Presiding Judge.

Gwinnett Community Bank ("GCB") filed suit on a note and certain guaranties and asserted claims of fraud and breach of fiduciary duty against, inter alia, the debtor, Arlington Capital, LLC, and the guarantor, Richard Tucker. In an earlier order, the trial court granted summary judgment against GCB on its claims on the note and guaranties, and GCB's subsequent appeal was dismissed, which thereby established the trial court's order as the law of the case. On remittitur, the trial court granted summary judgment against GCB on its claims of fraud and breach of fiduciary duty and denied summary judgment to GCB on three counterclaims filed by Arlington. GCB appeals these two rulings. We affirm the trial court's grant of

summary judgment to Arlington and Tucker on GCB's claims for fraud and breach of fiduciary duty. We also hold, however, that the "law of the case" rule requires that we reverse the trial court's denial of summary judgment to GCB on three of Arlington's counterclaims. Accordingly, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). Because this opinion addresses cross motions for summary judgment, we will construe the facts in favor of the appellant, GCB, in Division 1, and, in Division 2, in favor of the appellees, as appropriate.

Construed in favor of GCB, the record shows that in August 2004, Arlington Capital, LLC, whose business provides "mezzanine financing" by borrowing money from banks and lending that money to real estate clients, established a line of credit with GCB by executing a one-year, $4 million promissory note in favor of GCB (the "Arlington Note"), guaranteed by Arlington's principal, Richard Tucker. The Arlington Note was renewed annually each year through and including August 2008;

2

each renewal was subject to a commercial security agreement. From at least 2006 forward, each security agreement provided that GCB would have a security interest in specified property that Arlington "owns or has sufficient rights in which to transfer an interest, now or in the future" including "the assignment of promissory notes and deeds to secure debt made payable to [Arlington]."

With each renewal, Arlington and Tucker also provided new financial statements and executed new notes. In each annual promissory note signed by Tucker on behalf of Arlington, Arlington warranted that "the financial statements and information I provide to you are or will be accurate, correct and complete." In early 2009, GCB discovered for the first time that Tucker's financial statements associated with the 2007 and 2008 renewals failed to reflect that Tucker had disposed of real estate valued at approximately $6 million and that the real estate was sold for inadequate consideration, thereby depleting Tucker's net worth to a material degree.

Meanwhile, on November 21, 2006, Arlington loaned $2.5 million to non-party Shiloh Woods, LLC and, in exchange, took a $2.5 million promissory note from Shiloh Woods secured by a second priority deed to secure debt on certain property, as well as certain guaranties (the "Shiloh Woods Note and Deed"). Apparently on that same day, in exchange for a $2 million advance on the GCB line of credit, which

3

advance was used to help fund the loan to Shiloh Woods, Arlington assigned the Shiloh Woods Note and Deed to GCB to secure further its line of credit with GCB; Arlington drafted the two assignments. During the recession, the Shiloh Woods Note and Deed, as well as the first priority position on the Shiloh Woods Deed, went into default, and in 2009, Arlington defaulted on the Arlington Note.

In May 2010, GCB filed suit on the Arlington Note and Tucker guaranties against Arlington, Tucker, and others who are not parties to this appeal. During the litigation and faced with the possible foreclosure of the first priority secured position on the Shiloh Woods Deed, which could have eliminated GCB's second priority security position, GCB agreed with Shiloh Woods to exchange/sell the Shiloh Woods Note and Deed for a form of security more acceptable to GCB, including new secured property, a new promissory note payable to GCB, and new guaranties benefitting GCB. Although GCB had met with Arlington and Shiloh Woods regarding a "settlement" of some sort, GCB failed to give Arlington and Tucker the specific notice of disposition of the Shiloh Woods collateral required by OCGA § 11-9-611 (b)[1] of the Secured Transactions provisions of the Georgia Uniform Commercial

_____

[1] OCGA § 11-9-611 (b) provides in full,
Except as otherwise provided in subsection (d) of this Code section, a

4

Code. As a consequence, Arlington and Tucker amended their defenses and added counterclaims to assert that GCB failed to give Arlington proper notice of the sale as required by the UCC.

Specifically, in Counterclaim I, Arlington and Tucker sought damages under the UCC for alleged lost surplus value, i.e., the extent to which the Shiloh Woods Note and Deed exceeded the value of the balance due on the Arlington Note at the time that GCB sold the Shiloh Woods Note and Deed. In Counterclaims II and III, Arlington and Tucker raised claims of conversion and breach of the 2008 security agreement, respectively, and sought damages for the same alleged lost surplus value sought in Counterclaim I, as well as punitive damages arising out of the conversion. Finally, in Counterclaim VIII, Arlington and Tucker claimed that GCB breached federal privacy laws and an online "privacy statement" when GCB communicated with Shiloh Woods regarding the sale/exchange of the Shiloh Woods Note and Deed. [2]

secured party that disposes of collateral under Code Section 11-9-610 shall send to the persons specified in subsection (c) of this Code section a reasonable authenticated notification of disposition.

[2] Arlington's remaining counterclaims are not relevant to this appeal.

Later, Arlington and Tucker moved for summary judgment on Counts I and II of GCB's complaint on two grounds: (1) that the exchange of the Shiloh Woods Note and Deed constituted a sale of a promissory note for purposes of the UCC and, pursuant to OCGA §§ 11-9-608 (b)[3] and 11-9-615 (e),[4] GCB was precluded as a matter of law from seeking a deficiency judgment against either Arlington or Tucker; and (2) that GCB's failure to provide notice of the Shiloh Woods sale as required by OCGA § 11-9-611 raised a presumption that the sale satisfied Arlington's contractual debt to GCB. In its first summary judgment order, the trial court cited both theories and concluded that "the creditor loses not merely the right to recover a personal judgment against the debtor, but also the right to recover the deficiency." Accordingly, the trial court granted summary judgment to Arlington and Tucker on Counts I and II of GCB's complaint.

_____

[3] OCGA § 11-9-608 (b) provides in full,
If the underlying transaction is a sale of accounts, chattel paper, payment intangibles, or promissory notes, the debtor is not entitled to any surplus, and the obligor is not liable for any deficiency.

[4] OCGA § 11-9-615 (e) provides in full,
If the underlying transaction is a sale of accounts, chattel paper, payment intangibles, or promissory notes: (1) The debtor is not entitled to any surplus; and (2) The obligor is not liable for any deficiency.

6

GCB appealed the ruling to this Court and argued that there was an issue of fact about whether it had rebutted the presumption mentioned above; neither Arlington nor Tucker cross-appealed.[5] In response, Arlington and Tucker moved to dismiss the appeal and argued that GCB's appeal was moot because GCB failed to challenge the trial court's grant of summary judgment under OCGA §§ 11-9-608 (b) and 11-9-615 (e). This Court granted the motion and dismissed GCB's appeal, and the Supreme Court denied certiorari. Following the remittitur, GCB and Arlington/Tucker voluntarily dismissed some of their remaining claims and cross-claims and filed cross-motions for summary judgment or to dismiss all claims remaining between them except for Counterclaim I (UCC damages for lost surplus value).

The trial court granted summary judgment in favor of Arlington and Tucker on GCB's four remaining claims: Count V (breach of fiduciary duty against Tucker), Count VI (fraud against Tucker), Count VII (punitive damages against Tucker), and Count VIII (attorney fees against Arlington and Tucker). These four claims arose out

---

[5] See generally OCGA § 5-6-38 (an "appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him"); *The Ga. Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987) ("The general rule is that an appellee must file a cross-appeal to preserve enumerations of error concerning adverse rulings.") (citations omitted).

of GCB's allegation that leading up to the 2007 and 2008 renewals of the Arlington Note, Tucker, on behalf of Arlington and himself, failed to disclose asset transfers valued at approximately $6 million, which reduced Arlington and Tucker's ability to meet their financial obligations, and that GCB would not have agreed to the 2007 and 2008 renewals had it known the truth. In its first enumeration of error, GCB appeals the grant of summary judgment as to GCB's remaining claims. In its second enumeration, GCB contends the trial court erred by denying GCB summary judgment on Counterclaims II, III, and VIII.

1. GCB contends the trial court erred by concluding that the court's earlier ruling on Counts I (breach of the Arlington Note) and II (breach of Tucker's guaranties) barred GCB from recovering on its breach of fiduciary duty claim (Count V), its fraud claim (Count VI), or its punitive damages and attorney fee claims (Counts VII and VIII). GCB also contends that the trial court erred in concluding that it cannot prevail on the tort claims because there is no evidence of a fraudulent misrepresentation or evidence that Tucker owed a fiduciary duty to GCB.

(a) Pretermitting whether the trial court properly concluded that GCB's sale of collateral in 2010 constituted a full and final satisfaction of all debts it was owed by Arlington and Tucker and, thus, eliminated any damages that GCB may have suffered

8

from their alleged fraud, the trial court did not err in concluding that GCB presented no evidence of any material misrepresentation by Arlington or Tucker and, as a result, cannot prevail on its fraud claim.

First, as to GCB's claim that Tucker fraudulently failed to notify it that he had transferred the "River Club property" to his wife in April 2007, this assertion ignores the fact that Tucker *never listed the "River Club property" as collateral for the note in his financial statements*. In fact, each of the financial statements listed some, but not all, of the following parcels of real estate as Tucker's assets: "Ga. 120/I-85"; "St. Andrews Sq. (res)"; "Beverage Superstore"; "Sea Island (res)"; "70 ac. Ga. 20"; "Lake Burton (res)"; "One Acre I-85"; "Suwanee Station Shopping Center"; "Hwy. 53 Forsyth/Dawson"; "Webb 20"; and "Coldwater Creek (156 acres)."

Although the dissent contends that there is a "sufficient link for purposes of summary judgment" to find that the "River Club property" was identified in the financial statements as "St. Andrews Sq. (res)," the only evidence upon which it relies to support such a finding is a statement in the affidavit of GCB's president, John Martin, in which he averred that the property transferred by Tucker in April 2007 had "a reported value of $650,000, but [was] worth far in excess of that," and was listed on Tucker's 2008 financial statement. Significantly, however, Martin did not state

9

that the "River Club property" was, in fact, listed on the financial statements as "St. Andrews Sq. (res.)." Even so, because the "St. Andrews Sq. (res)" property was the only property listed on the 2008 financial statement as having a value of $650,000 (albeit with an outstanding mortgage of $240,000), the dissent contends that this is sufficient for a jury to find that the financial statement's reference to "St. Andrews Sq. (res)" must refer to the same parcel of property that has otherwise been consistently referred to as the "River Club property" in this litigation. We conclude, however, that Martin's affidavit statement is legally insufficient to support a finding that the parcels are the same. See *Isbell v. Credit Nation Lending Svc.*, 319 Ga. App. 19, 25 (2) (a) (ii) (735 SE2d 46) (2012) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted). Thus, the trial court did not err in concluding that Tucker did not list the "River Club property" as collateral for the note in his financial statements.[6] And, as the trial court found, it follows that GCB could not have relied on his ownership of the "River Club

---

[6] Notably, the financial statements specifically state that the list of assets and liabilities provided therein "represents all [of Tucker's] liabilities but does not include all [of his] assets."

10

property" as a basis for making the loan to Arlington, and Tucker's transfer of that property cannot support a fraud claim as a matter of law.

Second, there is no merit to GCB's contention that Tucker's 2008 financial statement contained a material misrepresentation. The cover sheet of the financial statement displays an effective date of January 10, 2008. It is undisputed that Tucker did not transfer the "Lake Burton property" or the "Sea Island property" property until June 27, 2008. There is no evidence in the record that the 2008 financial statement did not accurately reflect Tucker's assets *on January 10, 2008.* Although the dissent adopts GCB's argument that the financial statement purports to list Tucker's assets as they existed *in August 2008*, when he provided the statement to the bank in conjunction with the annual renewal of the note, it relies solely on a statement in Martin's affidavit that Tucker "represented [that the financial statement] was his current statement of financial condition" on the date he renewed the note. In support of that assertion, however, Martin referred only to a fax cover sheet dated August 21, 2008. Even when viewed in favor of GCB, the only logical inference from this assertion is that Tucker *faxed* his 2008 financial statement to the bank in August 2008, yet *neither the fax cover sheet nor the 2008 financial statement make any representation* that the statement represents Tucker's financial condition *as it existed*

11

*on the date he faxed it to the bank or on the date of the 2008 renewal.*[7] Accordingly,

the dissent improperly relies on Martin's unsupported assertion in finding that it was

evidence that Tucker made such a representation to GCB. See OCGA § 9-11-56 (e)

("Supporting and opposing affidavits shall be made on personal knowledge, shall set

forth such facts as would be admissible in the evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein. Sworn or certified

copies of all papers or parts thereof referred to in an affidavit shall be attached thereto

or served therewith. . . . When a motion for summary judgment is made and supported

as provided in this Code section, an adverse party may not rest upon the mere

allegations or denials of his pleading, but his response, by affidavits or as otherwise

provided in this Code section, must set forth specific facts showing that there is a

genuine issue for trial. If he does not so respond, summary judgment, if appropriate,

shall be entered against him."); *Mimick Motor Co. v. Moore*, 248 Ga. App. 297, 299

(1) (b) (546 SE2d 533) (2001) ("Bare conclusions and contentions unsupported by

_____

[7] The 2008 promissory note does include the following provision: "I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete." As shown above, however, there is no evidence that the 2008 financial statement was not "accurate, correct and complete" as of its effective date, January 10, 2008.

an evidentiary basis in fact are insufficient to oppose a motion for summary judgment."), citing *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 336 (2) (a) (508 SE2d 750) (1998) (Affidavits that did not "constitute statements of facts" because they lacked "specificity as to times, places, party or parties, transactions, occasions, or events," were insufficient to avoid summary judgment.); *Collins v. West American Ins. Co.*, 186 Ga. App. 851, 852 (3) (368 SE2d 772) (1988) ("It is axiomatic that conclusory allegations by way of an affidavit will not be sufficient to avoid summary judgment") (citation and punctuation omitted); *Swanson v. Lockheed Aircraft Corp.*, 181 Ga. App. 876, 879-880 (1) (b) (354 SE2d 204) (1987) ("[C]onclusory allegations by way of an affidavit, unsupported by specific allegations of fact, will not be sufficient to avoid summary judgment. It is clearly the law that answers, depositions or affidavits containing mere legal conclusions and allegations present no issues of fact on a motion for summary judgment. An affidavit in contravention of a motion for summary judgment must state more than mere conclusions; it must state specific adverse facts.") (citations and punctuation omitted); see also *Kirkland v. Earth Fare*, 289 Ga. App. 819, 822, n. 12 (658 SE2d 433) (2008) (Plaintiff's conclusory allegations about the amount of damages he believed he had

13

suffered and may suffer in the future were insufficient evidence of pecuniary damage to withstand a motion for summary judgment.).

Further, as the trial court ruled, "[i]f GCB required financial statements with an effective date that was the same as the delivery date, it should have demanded as much."[8] It failed to do so. Consequently, the trial court properly concluded that, "in the absence of any showing that the [2007 and 2008] financial statements were inaccurate as of their effective date[s], there can be no recovery for fraud, because there can be no showing of a misrepresentation."

(b) With regard to breach of fiduciary duty, in general there is no fiduciary relationship between a borrower and a lender. See generally *Russell v. Barnett Banks, Inc.*, 241 Ga. App. 672, 673-674 (527 SE2d 25) (1999). But,

> [w]hen a corporation becomes insolvent its directors are "bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves."

---

[8] In fact, as shown above, the note expressly authorized GCB to demand more recent financial information before it renewed the note in August 2008. See footnote 7, supra.

14

*Hickman v. Hyzer*, 261 Ga. 38, 40 (2) (401 SE2d 738) (1991) (quoting *Ware v. Rankin*, 97 Ga. App. 837-838 (104 SE2d 555) (1958). See also *Randall & Neder Lumber Co. v. Randall*, 202 Ga. App. 497, 499 (1) (414 SE2d 718) (1992) (when corporation is insolvent, officers and directors can be liable for preferential transfers of corporate assets to themselves). Nevertheless, and without deciding whether the above exception to the general rule applies for any other reason, we find no evidence in the record to show that Arlington was insolvent at the time that Tucker allegedly transferred personal assets to Tucker family members or Tucker-controlled entities for inadequate consideration in April 2007 or June 2008. BCB's only related factual assertion is that Arlington had a negative net worth at the end of 2008. Accordingly, this claim must fail.

(c) It follows that, because GCB cannot prevail on its fraud and breach of fiduciary duty claims, the trial court properly granted summary judgment to Arlington and Tucker on GCB's claims for punitive damages and attorney fees. *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008).

2. In its second enumeration of error, GCB contends the trial court erred by refusing to grant summary judgment in GCB's favor on Counterclaims II, III, and

VIII. For the purposes of this Division, relevant disputed facts will be construed in favor of Arlington and Tucker.

(a) GCB contends Counterclaims II and III are preempted by the remedy provided by the UCC for lost surplus value, which remedy Arlington seeks under Counterclaim I[9] and that Arlington cannot prove the requisite elements of either claim. We agree because, under the "law of the case" rule, Arlington, like GCB, is bound by the trial court's determination that OCGA §§ 11-9-608 (b) and 11-9-615 (e) apply to this action.

(i) In Counterclaim II, Arlington claimed that GCB converted the alleged surplus value of the Shiloh Woods collateral and that it was entitled to return of the surplus as well as punitive damages. A general provision of the UCC provides that unless "displaced" by a particular provision of the UCC, other law supplements the law of the UCC:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud,

---

[9] Counterclaim I (damages under the UCC for lost surplus value) remains pending below.

16

misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

OCGA § 11-1-103.[10] Thus, we must determine whether Arlington's claim of conversion is displaced by its remedy for the alleged loss of the surplus under the UCC.

As a result of the first appeal, the trial court's initial summary judgment ruling on Counts I and II of GCB's complaint became the law of the case.

The effect of the dismissal of the first appeal from an appealable judgment was to affirm the judgment of the trial court there excepted to and the trial court was without authority to vacate or alter such prior judgment which was res judicata between the parties.

(Citations omitted.) *Aetna Cas. & Surety Co. v. Bullington*, 227 Ga. 485 (2) (181 SE2d 495) (1971); *Potter-Miller v. Reed*, 302 Ga. App. 199, 200 (2) (690 SE2d 215) (2010) (same). See also OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the

---

[10] "Displace" has been defined to mean "to occupy the place of; replace; supplant." Collinsdictionary.com. See also Merriam-Webster.com ("to take the place of ...: supplant").

17

case may be."); see generally *State v. Lejeune*, 277 Ga. 749, 756 (3) (B) (594 SE2d 637) (2004) (The law-of-the-case doctrine applies only when the same issue has been actually litigated and decided.).

Here, the trial court's first summary judgment order established that OCGA §§ 11-9-608 (b) and 11-9-615 (e) apply to the parties' dispute, thereby precluding GCB from seeking a deficiency judgment. Thus, regardless whether either OCGA §§ 11-9-608 (b) or 11-9-615 (e) would apply to the facts of this case absent the trial court's prior ruling,[11] the parties are bound by that ruling.

---

[11] OCGA §§ 11-9-608 and 11-9-615 provide rules for application of proceeds of "collection and enforcement" and "disposition" respectively; arguably, only one of the two could apply to this case. Moreover, each Code section establishes rules for handling two types of security interest. OCGA §§ 11-9-608 (a) and 11-9-615 (d) each provide that when a "security interest . . . secures payment or performance of an obligation," the obligor is liable for any deficiency and the debtor is entitled to any surplus. In contrast, OCGA §§ 11-9-608 (b) and 11-9-615 (e) each provide that when "the *underlying transaction* is a sale of accounts, chattel paper, payment intangibles, or promissory notes," the obligor is not entitled to a deficiency and the debtor is not entitled to a surplus. See also OCGA § 11-9-318 (a) ("A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold."). Without deciding the issue, it appears to this Court that the "underlying transaction" referred to in OCGA §§ 11-9-608 (b) and 11-9-615 (e) is the transaction associated with the creation of the security interest, not the post-default disposition of collateral subject to that security interest. See OCGA § 11-1-201 (37) ("'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The term also includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9 of this title."). See

18

These two Code subsections, when applicable, provide a specific remedy governing both the deficiency and the surplus: "the debtor is not entitled to any surplus, and the obligor is not liable for any deficiency." OCGA §§ 11-9-608 (b); 11-9-615 (e). See also OCGA § 11-9-318 (a) ("A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold."). Arlington and Tucker were well aware of this law when they sought to dismiss GCB's first appeal. In their motion to dismiss, Arlington and Tucker informed this Court that their first motion for summary judgment asserted that under OCGA §§ 11-9-608 (b) and 11-9-615 (e), "[GCB] was not entitled to a deficiency and [Arlington and Tucker] were entitled to receive *no surplus*." (Emphasis supplied). Having prevailed on this argument, Arlington and Tucker are bound by it.

> It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing. A party cannot now complain of a result he aided in causing, because induced error is not an appropriate basis for claiming prejudice.

---

also 4 White, Summers, & Hillman, Uniform Commercial Code § 34-5 (6th ed.) ("If the [debtor] signs a note promising to repay the bank's [] loan and a document titled 'security agreement,' we have a secured loan, not a sale of chattel paper. . . .").

(Citations and punctuation omitted.) *Camp Cherokee v. Marina Lane, LLC*, 316 Ga. App. 366, 371 (2) (729 SE2d 510) (2012).

Thus, because the decision to apply OCGA §§ 11-9-608 (b) and 11-9-615 (e) to the parties's claims constitutes law of the case, Arlington is not entitled to recover any alleged lost surplus value of the Shiloh Woods collateral. Yet in its conversion claim, Arlington seeks to recover the alleged lost surplus value. If Arlington were allowed to pursue a claim of conversion, it would be allowed to recover damages which it is not authorized to recover under the law of the case. Accordingly, under the unique and specific circumstances of this case, OCGA §§ 11-9-608 (b) and 11-9-615 (e) displace Arlington's common-law remedy of conversion of the alleged lost surplus value of the Shiloh Woods Note and Deed. GCB was therefore entitled to summary judgment on Counterclaim II.

(ii) In Counterclaim III, Arlington alleged that GCB breached the 2008 security agreement associated with the 2008 renewal of the Arlington Note and Deed by failing to comply with the Georgia UCC notice provision addressed above and by breaching "other [unspecified] provisions" of that security deed. In its appellate brief, Arlington explains that GCB breached its contractual duty to "protect and preserve" any of Arlington's collateral that GCB came to possess. As damages, GCB seeks

20

precisely the same alleged loss surplus value as sought in Counterclaims I and II. The UCC provides that "[w]hether an agreement has legal consequences is determined by the provisions of this title, if applicable; otherwise by the law of contracts." OCGA § 11-1-201 (3). Here, as established by the law of the case, OCGA §§ 11-9-608 (b) and 11-9-615 (e) displace Arlington's alternate remedies and provide that Arlington may not recover any surplus. Therefore, GCB was entitled to summary judgment on Counterclaim III.

(b) In Counterclaim VIII, Arlington asserted claims of breach of contract, fraud, and invasion of privacy arising out of its allegation that GCB knowingly breached federal privacy laws and an online "privacy statement" when GCB communicated with Shiloh Woods regarding the disposition of the Shiloh Woods Note and Deed.

With regard to Arlington's allegation that GCB has violated federal privacy laws, Arlington has failed to cite any federal law to support its argument either in the trial court or on appeal.

With regard to the "privacy statement," GCB asserted that none of the contracts between the parties contain a "privacy" clause, and Arlington has failed to rebut that assertion. Arlington counters that GCB breached its online privacy statement, and

Arlington attached a copy of that statement to a brief in the trial court. A review of that statement shows that the statement applies only to consumer customers, however:

> This is our privacy notice for our customers. When we use the words "you" and "your" we mean the following types of customers: Our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as a(n): Deposit account[,] Loan account[,] Credit card account[,] Safe deposit box[,] Self-directed Individual Retirement Account[,] Mortgage brokerage services[.]

The provisions of the privacy statement upon which Arlington relies begin with "you" or "your."

Black's defines "consumer" as "A person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." Black's Law Dictionary (9th ed. 2009). See also Merriam-Webster.com ("a person who buys goods and services"). OCGA § 44-14-260 (found in Chapter 14, which governs "Mortgages, Conveyances to Secure Debt, and Liens"), defines a "commercial transaction" as "a transaction which gives rise to an obligation to pay for goods sold or leased, services rendered, or moneys loaned for use in the conduct of a business or profession and not for personal consumption"; the same Code section defines a "consumer transaction"

22

as "the sale, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." Thus, a plain reading of GCB's online privacy statement shows that it does not apply to Arlington, a self-described provider of mezzanine financing to residential and commercial real estate developers in Georgia.

All of Arlington's claims in Counterclaim VIII are based on the applicability of unspecified federal law or the GCB privacy statement, and therefore the entire counterclaim fails as a matter of law. The trial court erred by failing to grant summary judgment in favor of GCB on that counterclaim.

*Judgment affirmed in part and reversed in part. Phipps, C. J., and Miller, J., concur. Ray, J., concurs in judgment only. Andrews, P. J., Barnes, P. J., and Branch, J., concur in part and dissent in part as to Division 1 (a) and (c).*

A13A2397. GWINNETT COMMUNITY BANK v. ARLINGTON
    CAPITAL, LLC et al.

BRANCH, Judge, dissenting.

I respectfully dissent to Division 1 (a) & (c) of the majority opinion because (1) GCB has raised an issue of fact regarding whether Richard Tucker made willful misrepresentations of material fact or concealed material facts so as to deceive and mislead GCB regarding his assets and (2) the trial court erred by concluding that GCB could not show damages for fraud.

1. GCB's claim of fraud (Count VI of its complaint) arose out of GCB's allegation that leading up to the 2007 and 2008 renewals of the Arlington Note, Tucker, on behalf of Arlington and himself, failed to disclose asset transfers valued at approximately $6 million, which reduced Arlington and Tucker's ability to meet their financial obligations, and that GCB would not have agreed to the 2007 and 2008 renewals had it known the truth.

More specifically, and construed in GCB's favor as we must for the purposes of summary judgment, the facts relevant to GCB's claims of fraud and breach of

fiduciary duty are that Arlington, in each annual promissory note signed by Tucker on behalf of Arlington, warranted that "the financial statements and information I provide to you are or will be accurate, correct and complete"; that in July or August of each year, at the inception of the loan and for each renewal, Tucker provided GCB with personal financial statements dated January of that same year; that GCB relied on these financial statements to renew the loan each year; that Tucker's January 2009 financial statement reflected that Tucker had disposed of one parcel of property prior to the August 2007 renewal of the Arlington Note and disposed of two other parcels of real property prior to the August 2008 renewal (with the three parcels valued at $6 million in total); that neither Arlington nor Tucker informed GCB, and GCB was not aware, of the disposal of the property prior to the relevant renewals; that one of the parcels was, in fact, transferred on April 20, 2007 but not reflected on the January 2008 financial statement; that two of the parcels were transferred on June 27, 2008, but GCB was not informed of these transfers prior to the August 2008 renewal of the Arlington Note; that Tucker did not deliver the January 2008 financial statement to GCB until August 20, 2008, after all three parcels had been transferred, *yet Tucker represented that the January 2008 statement reflected his financial condition as of August 2008*; that the three parcels were transferred to Tucker family members or

2

Tucker-controlled entities for inadequate consideration, thereby depleting Tucker's net worth to a material degree; that GCB would not have renewed the Arlington Note in 2007 or 2008 had it known that Tucker had so disposed of the property; and that GCB was damaged as a result because if it had not renewed the Arlington Note in 2007 or 2008, it would have recovered more than it did from the disposition of the Shiloh Woods collateral in 2012.

The above factual allegations, construed in favor of GCB, create an issue of fact as to whether Tucker made willful misrepresentations of material fact or concealed material facts so as to deceive and mislead GCB. See OCGA § 51-6-2 (a) ("Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action.").

The two failures in GCB's facts found by the majority are belied by the record. First, John Martin, GCB's president, provided in his affidavit a sufficient link for purposes of summary judgment to match the property transferred on April 20, 2007, which was allegedly falsely listed on Tucker's January 2008 financial statement, with an entry on that same financial statement: Martin averred that the property was listed

3

on that statement with a value of $650,000, and only one property is listed with that value; and Martin swore that the deed attached to his affidavit, dated April 20, 2007, represented the property listed as worth $650,000. GCB's complaint also refers to the same deed, which is attached and incorporated into the complaint. The fact that GCB's complaint refers to the same deed as the "River Club Property" and the financial statement refers to it as "St. Andrews Sq." is a red herring. Martin's affidavit links the same deed referred to in the complaint with the $650,000 entry on the financial statement based on his "personal knowledge" of the properties listed by Tucker on his financial statements. Thus, Martin's affidavit is not based on guesses or speculation. It is the majority that discounts the fact that Martin made an affidavit based on his personal knowledge with the transaction at hand that puts a material fact at issue.

The majority's second line of attack also discounts Martin's affidavit. The majority concludes that GCB could not have relied on the January 2008 financial statements because the 2008 annual renewal of the Arlington Note and Deed occurred in August of that year. But Martin specifically averred that Tucker *represented* that his financial statements dated January 2008 reflected his financial condition as August of that year:

4

> Mr. Tucker did not deliver [the financial statements] dated January of 2008 to [GCB] until August 20, 2008, and represented it was his current statement of financial condition at that time for purposes of renewing the loan on August 20, 2008.

It simply does not matter that Martin did not refer to this representation in the cover sheet for the faxed financial statement. Martin did not state that the representation occurred in that document. His affidavit simply states that Tucker *represented* a specific fact. A statement that someone made a representation is a far cry from a "bare conclusion" (as the majority claims). The majority apparently finds Martin's statement incredible or that he could not possibly have personal knowledge of any such fact. "A movant for summary judgment has not met his burden where a material issue can be eliminated only by making credibility judgments." *Stevenson v. City of Doraville*, 294 Ga. 220, 223-224 (2) (751 SE2d 845) (2013). A witness's uncontradicted testimony cannot simply be disbelieved in order to eliminate the evidence it provides. Id.

On summary judgment, the nonmovant is required to show that there was no genuine issue of material fact. See *Johnson v. Omondi*, 294 Ga. 74, 78 (751 SE2d 288) (2013). Tucker has not met this burden. I would reverse the grant of summary judgment on GCB's claim of fraud. And, because GCB's claim of fraud survives, its

5

claims for punitive damages and attorney fees should also survive because they arise out of the same allegation of fraud. *Stephen A. Wheat Trust v. Sparks*, ___ Ga. App. ___, ___ (7) (Case No. A13A2081, decided February 6, 2014); *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008). See also OCGA § 13-6-11 (expenses of litigation allowed "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith").

2. The trial court also erred by concluding that GCB could not show damages for fraud.

In the summary judgment order now on appeal, the trial court found that GCB's claim of fraud was barred by the court's earlier grant of summary judgment on Counts I and II. Specifically, the trial court found as a matter of law that GCB could not prove it suffered any damage as a result of any breach of fiduciary duty or fraud in connection with the 2007 and 2008 renewals because (1) the trial court's earlier order represented a full satisfaction of all debts owed by Arlington or Tucker to GCB under the Arlington Note and Tucker guaranty; (2) the value recovered through the exchange of the Shiloh Woods Note equaled the debt owed to GCB and, therefore, "it is axiomatic that all sums GCB could have recovered from Arlington . . . and

6

Tucker have been satisfied in full"; (3) GCB could show no damages related to its breach of fiduciary duty or fraud claims for the above reasons; (4) GCB's fraud claim also fails because there is no evidence in the record of a misrepresentation of fact; and (5) GCB's claims for punitive damages and attorney fees are dependent on the claims of breach of fiduciary duty and fraud, and therefore GCB could not recover on those claims either.

As the majority has held, the trial court's first summary judgment order is law of the case, and it established that OCGA §§ 11-9-608 (b) and 11-9-615 (e) apply to the parties' dispute and that GCB was precluded from seeking a deficiency judgment. Nevertheless, the 'law of the case' rule "applies only to actual decisions, not to issues raised but never ruled upon." (Punctuation and footnote omitted.) *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001). See also *State v. Lejeune*, 277 Ga. 749, 756 (3) (B) (594 SE2d 637) (2004) (law-of-the-case doctrine applies only when the same issue has been actually litigated and decided). Here, because no aspect of GCB's fraud claim was litigated in the prior motion for summary judgment, GCB

is not barred by the law of the case from pursuing Counts V through VIII of its complaint.[1]

Furthermore, GCB was free to pursue inconsistent remedies. The terms of the 2008 renewal of the Arlington Note specifically provide that GCB, upon default, may pursue any of its remedies under the contract or under state or federal law and that "[b]y selecting any one or more of these remedies [GCB does] not give up [its] right to later use any other remedy." See also OCGA § 9-11-8 (e) (2) ("A party may also state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both."); *Utica Mut. Ins. Co. v. Kelly & Cohen*, 233 Ga. App. 555, 556 (504 SE2d 510) (1998) ("alternative pleading is expressly authorized by OCGA § 9–11–8 (e) (2), regardless of any inconsistencies that may exist between the two causes of action.") (citation omitted). Nor is GCB barred by the UCC from raising a claim of fraud. See OCGA § 11-1-103 (unless displaced by a particular provision of the UCC, the principles of law and equity, including fraud, shall supplement the law of the UCC).

---

[1] The doctrines of collateral estoppel and res judicata are inapplicable "because both require a previous action between the same parties, and the trial court's orders came in the same action now on appeal." *State v. Mizell*, 288 Ga. 474, 478 (3) (705 SE2d 154) (2010), citing *Slakman v. State*, 280 Ga. 837, 841 (2) (c) (632 SE2d 378) (2006).

With regard to damages, although a party may pursue inconsistent remedies – for example, in contract and tort – he or she "is not permitted a double recovery of the same damages for the same wrong. He is entitled to only one satisfaction of the same damages, in either contract or tort." *Flanigan v. Exec. Office Centers*, 249 Ga. App. 14, 16 (1) (546 SE2d 559) (2001) (citations omitted); *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (692 SE2d 23) (2010) (same). See also *Ingles Markets v. Kempler*, 317 Ga. App. 190, 194 (2) (730 SE2d 444) (2012) ("the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole") (punctuation and footnote omitted). It has not been established in this case that GCB has been made whole on its claim of fraud. Although GCB lost the opportunity to pursue its contract claim to verdict, it has alleged an independent claim of fraud. And "[g]eneral damages awarded on a fraud claim may cover a broader range of damages than those awarded on contract claims." (Footnote omitted.) *Cavin v. Brown*, 246 Ga. App. 40, 43 (2) (a) (538 SE2d 802) (2000); OCGA § 51-12-2 (a) ("General damages are those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount.").

Moreover, where a party successfully pursues inconsistent remedies, he or she "is only required to make an election prior to judgment if inconsistent verdicts are rendered." (Citations omitted.) *St. Paul Fire & Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 17 (1) (566 SE2d 2) (2002). See also OCGA § 9-2-4 ("A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them."); *Marvin Nix Dev. Co.*, 302 Ga. App. at 568. It follows that the fact that GCB lost its claim on the Arlington Note and Tucker guaranties as a result of failing to provide the notice required by the UCC does not constitute an election of remedies. Cf. *Fussell v. Carl E. Jones Dev. Co.*, 207 Ga. App. 521, 522 (1) (428 SE2d 426) (1993) (court erred by concluding that grant of summary judgment on breach of warranty claim precluded appellant from pursuing alternative theory of fraud at trial). Nor does the record establish that the amount GCB received by way of the disposition of the Shiloh Woods Note and Deed[2] was equal to or greater than the amount of compensatory damages sought by GCB in its fraud claim against Tucker. Finally, if GCB is

---

[2] There is an issue of fact regarding the value, just prior to its sale/exchange, of the Shiloh Woods Note and Deed.

10

successful on its fraud claim, any damages would be offset by the value it received in the sale/exchange of the Shiloh Woods Note and Deed.

For these reasons, I respectfully dissent. I am hereby authorized to state that Presiding Judge Andrews and Presiding Judge Barnes join in this dissent.