**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 29, 2025**

# In the Court of Appeals of Georgia

A25A1359. JAMES v. THE STATE.

MCFADDEN, Presiding Judge.

After a bench trial, Abigail James was convicted of fleeing or attempting to elude a police officer (OCGA § 40-6-395), unlawfully approaching a stationary emergency vehicle (OCGA § 40-6-16), and obstructing a law enforcement officer (OCGA § 16-10-24). James appeals, challenging the sufficiency of the evidence supporting her convictions.[1] But the evidence, viewed in favor of the convictions, was sufficient to authorize the trial court to find James guilty beyond a reasonable doubt of those offenses. So we affirm.

1. *Evidence presented at bench trial*

---

[1] James was also convicted of improperly displaying a license plate (OCGA § 40-2-41), but she has not challenged that conviction in this appeal.

On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's [judgment], and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

*Soles v. State*, 360 Ga. App. 91, 93 (860 SE2d 623) (2021) (citation and punctuation omitted).

So viewed, the evidence presented at the bench trial showed that a police officer stopped his marked patrol vehicle, with its emergency lights activated, on the right side of a highway in Chatham County. The officer was stopped behind the patrol vehicle of a police corporal who was assisting in the traffic stop of a car that was being towed from the scene. The officer observed a white sport utility vehicle ("SUV") approaching in the right lane of the highway adjacent to the roadside where the police vehicles were stopped and the car was in the process of being towed. The corporal signaled with his hands for the driver of the SUV, later identified as James, to move over to the left lane or slow down. According to the officer, James could not have moved over because of traffic in the left lane, but she failed to slow down and instead kept up with the speed of the vehicles in the lane beside her. The officer testified that

the speed limit in that area was 55 miles per hour, that he estimated James was going at least 40 miles per hour, and that a reasonable speed for the circumstances would have been no more than 10 miles per hour.

The officer followed James to initiate a traffic stop. James pulled into a store parking lot and stopped in a parking space. . The officer, who was in his police uniform, approached her vehicle, identified himself, told James why she had been stopped, and asked for her driver's license. But James refused repeated requests from the officer to provide her license and to step out of her vehicle. James then backed her SUV out of the parking space and drove away from the officer as he pointed at her and ordered her not to leave.

After James ignored the officer's commands and began to leave the traffic stop, the officer followed in his patrol vehicle with the blue lights and siren activated. James drove out of the parking lot and onto a road, eventually stopping in a gas station parking lot. The officer and the corporal, who had arrived at the scene as backup, asked James several times to step out of her vehicle, but she refused to comply with their requests. After another backup officer arrived at the scene, James finally got out of her vehicle and was arrested.

James also testified at the bench trial. She admitted that during the initial traffic stop she did not give the officer her driver's license when he asked for it, she did not get out of her vehicle when he asked her to do so, and she drove away from the officer even though he told her not to leave the traffic stop. She also admitted that at the second stop in the gas station parking lot she again refused requests to get out of her car.

2. *Sufficiency of the evidence*

In three enumerations of error, James contends that her convictions should be reversed because the evidence was not sufficient to support them. We disagree.

(a) *Fleeing or attempting to elude*

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

OCGA § 40-6-395 (a).

As recounted above, the evidence at trial showed that the officer was in uniform and driving a marked patrol vehicle with its emergency lights activated when he first

4

stopped James; that she ignored his commands not to leave that traffic stop; and that she then drove away from the officer as he pursued her in his vehicle with the lights and the siren activated. "Accordingly, the evidence sufficiently supported [James'] conviction[] of . . . fleeing [or attempting to elude the officer]." *Miller v. State*, 351 Ga. App. 757, 765 (1) (b) (833 SE2d 142) (2019) (evidence that officers were in uniform and driving marked patrol vehicles when defendant ignored their commands to stop was sufficient to support conviction of fleeing or attempting to elude).

(b) *Approaching a stationary emergency vehicle*

> The operator of a motor vehicle approaching a stationary authorized emergency vehicle that is displaying flashing yellow, amber, white, red, or blue lights shall approach the authorized emergency vehicle with due caution and shall, absent any other direction by a peace officer, proceed as follows: (1) Make a lane change into a lane not adjacent to the authorized emergency vehicle if possible in the existing safety and traffic conditions; or (2) If a lane change under paragraph (1) of this subsection would be impossible, prohibited by law, or unsafe, reduce the speed of the motor vehicle to a reasonable and proper speed for the existing road and traffic conditions, which speed shall be less than the posted speed limit, and be prepared to stop.

OCGA § 40-6-16 (b).

Here, the evidence showed that James could not make a lane change as she approached the officer's stationary patrol vehicle with its blue lights activated. But

5

"[v]iewed in favor of the [judgment], the officer's testimony [also] support[ed] a finding that [James did not reduce her speed to a reasonable speed under the conditions and she was not prepared to stop] before she passed him." *Pierce v. State*, 322 Ga. App. 145, 147 (2) (743 SE2d 438) (2013). As the trial court found, James "had to slow down to a point to where if the officers or the wrecker driver stepped out she could come to a complete stop. The evidence was overwhelming that she did not slow down to that speed[.]" See *Stevenson v. City of Doraville*, 294 Ga. 220, 225 (2) n. 4 (751 SE2d 845) (2013) (under OCGA § 40-6-16, if a driver cannot change lanes, she must reduce her speed and be prepared to stop). "Under these circumstances, a rational factfinder was authorized to find [James] guilty beyond a reasonable doubt of violating [OCGA § 40-6-16]." *Van Auken v. State*, 304 Ga. App. 802, 806 (697 SE2d 895) (2010).[2]

---

[2]We note that "[a] sufficiency claim is different in kind from a fatal-variance claim, which merely is concerned with proof introduced in support of allegations and is not concerned with the findings the jury [or judge] may make after having heard the evidence. . . . [T]o the extent that [James'] sufficiency argument notes a difference between an allegation in the [accusation] and the proof at trial, [she] has offered no argument that this difference was a fatal variance — that is, that it prevented [her] from preparing [her] defense to the charges against [her], took [her] by surprise, or failed to adequately protect [her] against another prosecution for the same offense. So we cannot reasonably construe [her] sufficiency arguments as a fatal-variance claim, and we express no opinion as to whether such a claim could have been successful were

(c) *Obstruction*

"[A] person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." OCGA § 16-10-24 (a). Here, the evidence showed that James repeatedly refused to comply with the officer's lawful requests during the traffic stop that she provide her driver's license, step out of her vehicle, and not drive away from the scene of the stop. See *McNeil v. State*, 362 Ga. App. 85, 89 (866 SE2d 249) (2021) (during a traffic stop, an officer may verify the driver's license and ask the driver to step out of the vehicle). In addition to ignoring the officer's requests during the traffic stop, "by fleeing from an officer who had a lawful right to question [her, James] at the very least hindered the officer's [traffic] investigation and violated [the obstruction] statute." *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (e) (512 SE2d 650) (1999). Viewed in favor of the trial court's ruling, "the evidence sufficiently supported [James'] conviction[] of obstruction. . . ." *Miller*, supra at 765 (2) (b).

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*

---

it properly before us." *McCullum v. State*, 318 Ga. 485, 493 (2) n. 9 (899 SE2d 171) (2024) (citations and punctuation omitted).